ELLIS, Judge.
Amite Finance Company filed suit against Jeff Easley alleging it is the owner and holder for valuable consideration of a note dated June 18, 1957 in the amount of $3,- *689 750.00 signed by Easley, made payable to R. P. Watkins and by said Watkins endorsed under act of notarial transfer under date of April 2, 1963 to the Amite Finance Company, alleging that said note called for ten payments of $125.00 each, skip two months, ten payments more at $125.00 per month, skip two months, and ten payments of $125.00 each. This note stipulated if any installment was past due the entire obligation matured, and reasonable attorney fees would be due if placed in the hands of an attorney for collection. It further alleged the defendant’s failure to pay the installments when due matured the entire amount of $2961.20, and that, said note being secured by a mortgage on a 1957 Chevrolet and one 21 foot Ward body, it was entitled to and so prayed for the issuance of a sequestration, which was ordered.
The defendant answered and pled payment by specifically alleging that on December 19, 1962 he had sold the truck sequestered to one Delma Populis for $5000.00, and the purchase price of the truck was financed by the plaintiff company which paid the balance of the note described in Article 2 of the plaintiff’s petition, and also another debt defendant owed the plaintiff, and the latter issued its check to the defendant for the difference between the indebtedness owed to plaintiff and $5000.00, the consideration of the sale, which difference was $1,954.38. Wherefore, the defendant prayed for judgment rejecting the demands of the plaintiff at its cost.
A separate suit, which somehow became consolidated with the finance company suit, was brought by Hood Motor Company, Inc., against Jeff Easley, same defendant, in which it alleged the latter to be indebted unto it in the sum of $2100.00 for goods and merchandise sold to him, as more fully shown by an itemized statement annexed to the petition. This statement of account consisted of an affidavit executed by A. E. Hood, Jr., Secretary Treasurer of Hood Motor Company, Inc., setting forth the defendant was indebted to the plaintiff in the amount of $2100.00, which consisted of a check given the defendant in December of 1962 in the amount of $1954.38, and $145.62 due on open account for goods and merchandise purchased during 1962 for gas, oil, repairs, etc.
Again defendant answered the suit by specifically alleging “that any and all debts which defendant, Jeff Easley, might have owed to petitioner, Hood Motor Company, Inc., were paid on or about December 19, 1962, including the account herein sued upon.”
After trial there was judgment by the lower court in favor of the Amite Finance Company and against the defendant on the note in the full amount alleged and prayed for, with legal interest from date of judicial demand, attorney’s fees in the amount of 25% of the aggregate of principal and interest and all costs of these proceedings. Judgment was further rendered in favor of Hood Motor Company, Inc. in its suit against Jeff Easley in the full sum sued for of $2100.00 together with legal interest from date of judicial demand until paid and all costs of these proceedings.
The defendant has appealed devolutively from each judgment to this court.
 The defendant, having pled payment in each suit, bears the burden of proving it by competent evidence. He contends he has done this by proving a sale of the bus for $5000.00 to Populis, which was recognized as a sale and financed by the Amite Finance Company and which had been evidenced by the signing of a new note and mortgage by Populis to the Amite Finance Company, and further, by the fact that Hood Motor Company, Inc., had given Eas-ley a check for $1954.38 which represented the difference between the amount which Easley owed on tire note plus $145.62 owed on an open account and the $5000.00 for which he was selling the bus to Populis.
On the other hand, the plaintiff in each case contends that although Easley and Populis had agreed upon the terms of the sale of the bus for $5000.00, the completion *690 of .the sale, was contingent and dependent upon Populis securing the bus route which Easley was giving up by retirement effective approximately January 1st or 4th of 1963.
Easley testified by way of deposition which is in the record that when he contemplated obtaining a position as bus driver he purchased a 1941 bus for about “$2200.00 or $2300.00” although it was only worth about $700.00. His reason for giving three times more for the bus than it was worth is best explained by some of his testimony which is as follows:
“Q. Is it a common practice when school busses are sold that the route is sold along with it?
“A. The route goes with it, yet, sir, and when I got it, that is the way I got it. I bought it.
“Q. You paid extra for it?
“A. Yes, I bought an old ’41 Ford.
“Q. And you bought the bus and the route ?
“A. Yes, sir. That is exactly right. . Got the route with it, just the way it was sold to me, that’s the way I done.
“Q. You sold the bus and the route?
“A. I sold him the truck with that intention because the man told me he had the job.
“Q. Part of the consideration for the bus was that he got the route ?
“A. Yeah. If it hadn't been I would still have the truck.”
On the trial of the case Easley denied it was customary for a bus driver voluntarily or involuntarily retiring to sell his bus for .much more than it was worth because the purchaser was also going to secure the route.[1]
The record reveals that in the present case in November 1962 Mrs. Mixon, who was at that time the school board member from the Fifth Ward, began receiving complaints from the parents of the children riding the school bus that Easley’s young son was driving the bus, and also that the defendant had used profanity in the presence of the children. She saw Mr. Dewitt Sauls, Supervisor of Tangipahoa Transportation and Supervisor of Negro Schools, and told him she was going to bring charges against the defendant because of such complaints, and Mr. Sauls said “Hold off awhile and let me see if I can get his retirement worked out.” Mr. Sauls confirmed Mrs. Mixon’s testimony. He also testified he wrote the defendant a letter and had him come to his office and discuss the matter with him and told the defendant Mrs. Mixon was planning to bring some charges against him, and under the circumstances he believed it would be best for him to try to get disability retirement as the defendant was sick, and he would try to get such retirement “through for him.” The retirement officials of the State Board require an application for disability retirement within thirty to sixty days before it goes into effect, and in this case it was necessary that there be no delay as Mr. Sauls wished to get such retirement effective January 1st, 1963. It was only natural the defendant should wish to sell the old bus which he had absolutely no use for, and he soon found Delma Populis would buy the bus provided he could get the position and route which the defendant was relinquishing. In order to do this the defendant and Populis went to see the newly elected school board member in the Fifth Ward, Mr. Smith, who told them he had not taken of *691 fice yet and it would be satisfactory to him but in effect it would be within the province of the School Board of Tangipahoa Parish. After seeing Mr. Smith, the defendant and Populis went to see Mr. A. E. Hood, Jr., one of the owners and officers of Amite Finance Company as well as Hood Motor Company, Inc., and he told them the sale and refinancing for Populis would be satisfactory provided Populis secured the position as school bus driver and the school bus route from which the defendant was retiring. The defendant and Populis stated to Hood Populis had been approved for the route by the newly elected member of the School Board for the Fifth Ward but that it had to be approved by the School Board at its next meeting, and it was necessary for the transfer to be made prior to January 1, 1963 upon Mr. Dewitt Sauls instructions. Also it is shown by the record the defendant owed the Credit Union and had been notified if a transfer of the bus was to be made it would be necessary for him to pay the Credit Union prior to such transfer. Accordingly, on December 19, 1962 the defendant and Populis executed what is shown in the record as an “Affidavit of Donation or Isolated (Occasional) Sale” of the 1957 Chevrolet school bus for $6660.00 which was made up of $5000.00 plus $1660.00 refinancing charges. This document was not notarized although the form has a place for a notary public to sign. Also executed was “Application for Certificate of Title and Truck Registration” by Delma Populis showing the vehicle subject to chattel mortgage by Hood Motor Company, Inc., which is not notarized nor complete. Also executed is a “Transfer of Equity” on the 19th day of December, 1962 by Jeff Easley in and to the school bus to Delma Populis in consideration of $6660.00. This was signed by both Easley and Populis but not signed by Amite Finance Company nor Hood Motor Company, Inc., although the document contains a paragraph headed “Consent of Amite Finance Company” and beneath that “Approval of the Original Seller” and written in the blank is “Hood Motor Company, Inc.” None of these documents are complete and in no place did Amite Finance Company or Hood Motor Company, Inc., sign, although the forms clearly contemplated the participation of each in the transaction. These documents were placed in the safe of Hood Motor Company to be completed, according to the preponderance of the testimony which was given by Hood and Populis, upon approval by the School Board at its January meeting of Populis to the position of bus operator for the route which the defendant was relinquishing. When the School Board met they did not give the position to Populis but to one Mark Lanier.
The plaintiffs have also offered the testimony of an expert that the Easley bus, for which he was receiving $5000.00, was actually worth about $600.00 or $700.00. Much is made of the fact that the Hood Motor Company, Inc., gave the defendant a check for the difference between $5000.00 and the amount which he owed of $1954.38. This was done because of the Credit Union demand that its indebtedness be paid and, as frankly testified to by A. E. Hood, Jr., he had done business with the defendant for many years and had confidence in him.
Additionally it was shown Populis drove this school bus from the 6th of November, 1962 until the 4th of January, 1963 for the defendant, who received pay from the Tangipahoa Parish School Board for that period.
From the record we have not the least doubt but that the transaction involved in these two cases between the Amite Finance Company, the Hood Motor Company, Inc., Jeff Easley, the defendant, and Delma Populis was absolutely and without a doubt contingent upon the latter securing the position as a school bus driver and the route which defendant Easley was relinquishing by retirement in January, 1963.
Counsel for the defendant argues this court has no right to annul the sale between the latter and Populis. It is true Populis is not actually made a party to *692 this suit but he has sworn at length and definitely and positively in this case, and in order to decide the matter between the parties to the two suits it is necessary for this court to pass on the question of whether there was an actual completed sale. We have held there was not and one was never intended unless and until the School Board of Tangipahoa Parish had employed Populis as a school bus driver and awarded him a route. It would be ridiculous for anyone to give $5000.00 for an old worn out school bus which was worth six or seven hundred dollars unless he was going to obtain the stable position as a driver for the Tangipahoa Parish School Board.
The agreement between Populis and Easley, and the Amite Finance Company and Hood Motor Company, Inc., was not to be effective and completed unless and until Populis was employed by the Tangi-pahoa Parish School Board as a bus operator on or subsequent to the effective date of Easley’s retirement from such position. This never happened and Easley was well aware of the legal effect of such a failure in the condition precedent to the effect that he would still be liable and responsible for the obligations which were to be taken over by Populis with the consent of Amite Finance Company and Hood Motor Company, Inc., had Populis secured the position.
There is no proof of the reasonableness of the attorney fees and while such fees may be fixed by the Court without express testimony, we believe 15% would be equitable and proper in this case.
It is therefore ordered that the judgment of the District Court in favor of Amite Finance Company be amended 'by reducing the attorney fees in that case to 15%, and in all other respects said judgment to be affirmed.
For the above and foregoing reasons we are of the opinion that the judgment in favor of Hood Motor Company rendered by the District Court is correct and it is hereby affirmed.
Amended and affirmed.

. There is no evidence in the record, not even an intimation that any member of the school board had or was to receive any part of the consideration even though a retiring bus driver could command much more than Ms bus was worth provided the purchaser could secure the position and bus route that he was surrendering. Such position is very desirable and carried many benefits.