263 So.2d 734 (1972)
BLUE STREAK ENTERPRISES
v.
Ernest CHERRIE, Jr. and Joseph P. Braud.
No. 4924.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1972.
Rehearing Denied July 18, 1972.
*736 Maumus F. Claverie, Jr., New Orleans, for plaintiff-appellant.
Revius O. Ortique, Jr., New Orleans, for defendant-appellee.
Before SAMUEL, LEMMON and BOUTALL, JJ.
BOUTALL, Judge.
This is a suit on an open account for major repairs done to the engines of a boat by the plaintiff, from whom the boat was purchased, and for attorney's fees, by contractual obligation on this repair job. Defendants, purchasers, set up alternative defenses, one asserting nullity of the contract of repair for lack of consent and one alleging that Blue Streak's failure to properly prepare the craft for use was the cause of the damage which necessitated the repairs. Defendants also sought attorney's fees because of this alleged negligent action of Blue Streak. Judgment was rendered below for the defendants on the main demand, and dismissing the reconventional demand. Plaintiff appeals from his adverse judgment.
On February 6, 1969, defendants bought from the plaintiff a twin-engined Chris Craft cabin cruiser. Defendants, because of bad weather, were not able to run this boat out into Lake Pontchartrain for several weeks. On the first trip, defendants ran the boat into the lake, out the Industrial Canal to Lake Borgne, and back into Lake Pontchartrain. Upon leaving the Industrial Canal, to enter the lake, defendant Dr. Cherrie, who was operating the boat, testified that he had to wait in the canal about 15 minutes for the Seabrook Bridge to open in order to re-enter Lake Pontchartrain. When the bridge opened, Dr. Cherrie proceeded along the lake shore approximately as far as Franklin Avenue, a distance of several city blocks, when he heard noise and saw smoke coming from the engines below. At this point he noticed that the gauges on the instrument panel indicated the engines were overheated. They stalled and could not be restarted, and the boat had to be towed back to harbor.
The defendants contacted Blue Streak, who inquired of Chris Craft, the manufacturer, as to the possibility of the damages being covered by the manufacturer's warranty. The engines were inspected by Blue Streak, and it was found that both belts on both engines, driving the alternator and water pump, had come off, causing the engines to overheat to the point of damaging themselves. Repairs were done by Blue Streak totaling $489.62 (later amended to $498.09), but there is dispute over whether *737 this repair job was authorized by the defendants.
Dr. Cherrie testified that he agreed to let Blue Streak repair the boat, since Blue Streak agreed to pay for the repairs if Chris Craft did not honor the claim under the manufacturer's warranty. Mr. William Good, partner in plaintiff Blue Streak, testified that Dr. Cherrie agreed to pay if Chris Craft did not. There was doubt at this time as to Chris Craft's actions, since a preliminary telephone call to Chris Craft's representative had appeared negative. Plaintiff has introduced into evidence a work order, evidencing the job done on the boat. A printed clause on this order, admittedly signed by Dr. Cherrie, reads as follows:
"Our terms are Cash on completion of job and before return of boat. In the event collection action becomes necessary, customer agrees to pay all collection expenses, (sic) attorney's fees. (sic) and court costs plus legal interest on amount past due. Dockage will be charged commencing ....... hours after work has been completed at the rate of $2.00 per day. We are not responsible for articles left in Boats.
 Authorized by:
 S/ Dr. Ernest Cherrie, Jr."
 .............................
Had Blue Streak agreed to pay for the work if the manufacturer did not, then there seems no reason for this authorization to have been signed. Dr. Cherrie testified that Blue Streak required his or Dr. Braud's signature authorizing the work to be done, and we must presume that the doctor read it before he signed. He now testifies in contradiction of the written authorization which he himself signed.
A trial judge is in the best position to determine credibility of witnesses, by observing demeanor, etc., and when two equally opposing witnesses testify contrary to each other on a matter of fact, he may properly believe one and disbelieve the other, and this finding of fact will not be disturbed on appeal. However, the written document in the record before us, supporting the testimony of one witness over the other by its plain terms, makes the question one of preponderance of the evidence rather than credibility of witnesses. On probative value of testimony, the findings of the trial judge will not be taken as conclusive. Succession of Fields, 222 La. 310, 62 So.2d 495 (1952); Roder v. Pelican Rice Co., Ct.App.Orleans, 10 Orleans App. 120 (1913); Blache v. Goodier, 22 So.2d 82 (La.App.Orl.1945); Godfrey v. Baton Rouge Recreation and Parks Commission, 213 So.2d 109 (La.App. 1st Cir., 1968), writ refused 252 La. 958, 215 So.2d 128. The rule that the judgment of the trial court on questions of fact will not be disturbed unless manifestly erroneous is not applicable here, since the question is one of sufficiency and preponderance of evidence rather than credibility of witnesses. We feel that by the testimony of Mr. Good supported by the authorization document signed by Dr. Cherrie, the preponderance of evidence lies with the plaintiff on this question of fact, and that the trial judge erred in not recognizing this. Since there are no written reasons for judgment, we cannot tell if this finding of fact was the basis of his judgment; however, we find that the evidence shows that as a matter of fact the work was authorized to be done by the defendants, who agreed to pay if the manufacturer did not honor its warranty. There would be no reason whatsoever to obtain the owner's signature on the work-authorization if the repairer had agreed to stand all costs.
There were no relevant oral terms in this contract of repair other than the seeking of reimbursement from Chris Craft. In effect, this agreement to seek reimbursement is merely a forebearance on the part of Blue Streak as to collection of the debt until it is determined if Doctors Cherrie and Braud will be reimbursed by the manufacturer. We notice that the record is barren of any evidence whatsoever, as to the existence of any express warranty on the *738 boat by the vendor, Blue Streak. Since Blue Streak gave no express warranty, it is the owner of the boat and not the vendor who would be reimbursed for repairs by the manufacturer.
In absence of specific warranty, only that warranty which is implied in law obtains, which defendants set up as a second defense, alleging that Blue Streak represented that it had properly prepared the boat for use, but had not done so. Defendants allege the damages were caused when Blue Streak failed to adjust or improperly adjusted the water pump belts at time of sale.
This allegation is negated by the testimony of Mr. Good, who stated that the boat was adjusted, test-run, and rechecked just prior to sale to defendants. Moreover, plaintiff's mechanic, Hardy deBoisblanc, testified that he inspected the boat after damage, and, finding the belts off, marked the adjustable regulator, slackened it, replaced the three belts which were still whole, and adjusted the regulator to properly fit the belt. He found the marks lined up exactly, concluding that the belts were in proper adjustment when they came off. Mr. deBoisblanc was certified as an expert, and testified that the probable cause of the belts coming off was the running of the engines at extremely high R.P.M.'s with the clutch in neutral. His testimony corroborated that of Mr. Good, who said that this had happened in cases where the operator was inexperienced in handling twin-engined boats, and in fact had occurred just previous to trial to a boat attempting to moor next to Drs. Cherrie and Braud's boat. An owner's manual was introduced into evidence which cautions against this occurrence, and Mr. Good testified that this manual was supplied to the Doctors with the boat, and cautioned to them verbally by the salesman. Mr. deBoisblanc stated that the engines could not be run for more than a mile or so with the belts off, before overheating and burning up. Testimony also shows that any variance from the normal temperature would register on gauges located on the instrument console on the boat, which a photograph shows to be obvious to the operator's view. Had the operator noticed the abnormal rise in temperature and shut off the engines before they got too hot, most if not all of the damage would have been avoided.
This case is similar to an action of redhibition in which the vice must exist prior to sale, and a vice which comes into existence later, or is caused by abuse of the thing, will not support the action. Peters v. Pattison Pontiac, 259 So.2d 99 (La. App. 4th Cir., 1972) and citations therein.
We feel that in consideration of the above evidence, there was nothing wrong with the boat, that the belts were properly adjusted when purchased, and the damages were caused by events subsequent to sale. Therefore, Blue Streak will not be estopped from seeking payment for repairs thereon.
The sole evidence in the record from which we may determine the amount due to Blue Streak for the repairs done is the work sheet signed by Dr. Cherrie. This reflects parts cost of $128.78 and labor charges of $158.88, or a total of $287.66. This, being the only amount supported by the record as it stands before us, must be the recoverable amount of repairs. We can not consider the sum of $498.09 prayed for since it is not supported by the evidence in the record.
The work sheet authorization signed by Dr. Cherrie, binding as between the parties, enables certain other damages to be recovered by Blue Streak as well. Collection expenses, not prayed for and not part of the record before us, cannot be considered. Interest on the amount due, $287.66, will be charged at the legal rate from the date Chris Craft refused to honor the warranty claim, to which date plaintiff forebore collection, by testimony of Mr. Good, or January 29, *739 1970. Attorney's fees under the contractual clause above, prayed for in the amount of $300.00, but unsupported by evidence of any extraordinary work done, etc., will be awarded at 25% of the total judgment, excluding costs, which we feel is a reasonable rate for a collection case such as this. Costs, including costs of this appeal, are to be borne by the respective parties.
For the above reasons, the judgment appealed from is reversed and accordingly there is judgment rendered in favor of plaintiff-appellant, Blue Streak Enterprises, and against defendant-appellees, Ernest Cherrie, Jr., and Joseph P. Braud, in solido, in the sum of $287.66, together with legal interest from January 29, 1970, until paid, and 25% of said sum as attorney's fees. Appellant and appellees are each to bear their own costs.
Reversed and rendered.