283 So.2d 307 (1973)
Curtis E. JONES
v.
Jack BRYANT.
No. 5723.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
*309 Gordon K. Konrad, Gretna, for defendant, plaintiff in reconvention-appellant.
W. W. Thimmesch, Metairie, for plaintiff, defendant in reconvention, appellee.
Before LEMMON, J., and FEDOROFF and GAUTHIER, JJ., Pro Tem.
LEMMON, Judge.
Jack Bryant, the owner of certain immovable property, has appealed from a money judgment against him in favor of Curtis E. Jones, who formerly leased the property and operated a bar and lounge on the premises. The issues on appeal primarily involve the sufficiency of evidence.
During the term of the lease, the business faltered, and Jones requested to be released from his obligations under the lease. Bryant agreed to the release by written contract dated February 1, 1968, in consideration for Jones' transfer of all "right, title and interest in and to the business". Additionally, Bryant executed a promissory note on the same day payable to Jones and his business partner, Gerald Lemoine, the note reciting Bryant's promise to pay a certain sum "for Outdoor Sign located on premises." The terms of the note coincided with the remining installment payments owed by Jones and Lemoine from the original purchase of the sign.
Jones instituted this suit to enforce collection of the note. Bryant defended on the basis that Jones had agreed to repair the sign as a condition of the sale and had failed to do so. Bryant also filed a reconventional demand, as well as a third party *310 demand against Lemoine, seeking recovery of the amount that he expended to discharge numerous business debts left unpaid by Jones and Lemoine.
After a trial on the merits the trial court rendered judgment in favor of Jones in the full amount of the promissory note, subject to a credit for the payment of certain debts found to have been due by Jones and Lemoine. Bryant appealed suspensively.

PRINCIPAL DEMAND
Bryant contends that Jones' alleged promise to repair the sign constituted a suspensive condition and that Jones' failure to fulfill this condition nullified the sale and rendered the note unenforceable.
Bryant admitted the sign had not been in usable condition for some time prior to February 1. He nevertheless executed the promissory note, containing an unconditional promise to pay, in connection with the purchase of the sign. Under these circumstances he cannot void the sale on the basis that the consideration was inadequate or worthless, in the absence of a showing that his consent to the sale was obtained by fraud or misrepresentation. In this respect Bryant testified that Jones and Lemoine had agreed to repair the sign, but Jones insisted that Bryant had indicated his construction company's employees would perform the repairs. There was no evidence as to the value of the sign when the transaction occurred.
The trial judge held that Bryant accepted the sign in its condition at the time he signed the note. After reviewing the record, we concur with this holding.
However, Bryant contends that the trial court should not have awarded attorney's fees. The note provided:
"If the above be not paid when due and it should be placed in the hands of an attorney-at-law for collection, there shall be due attorney's fees and court costs paid for by Jack Bryant."
No amount of fee was specified in the note, nor was any evidence offered as to services performed by the attorney or the value thereof.
When a promissory note contains a provision for an attorney's fee, but the note does not specify the amount of such fee, the maker is deemed to have agreed to pay a reasonable fee. If the holder presents no evidence on the reasonableness of the fee, the court may fix the fee without express evidence on the point. Hood Motor Co. v. Easley, 165 So.2d 688 (La. App. 1st Cir. 1964); 18 A.L.R.3rd 734, 741.
In setting a fee, the court must consider both the amount and the value of the services performed. As to evidence on the amount of services, we distinguish the present case, in which an attorney on behalf of his client is suing a third party on a promissory note, from the case in which an attorney sues his own client for services performed. In the latter situation, the attorney must introduce evidence as to the amount of services, since this evidence would not otherwise be in the record of the action to collect the fee. In the present case, however, the record of the note collection proceedings reflects all or much of the attorney's services, although the attorney may introduce additional evidence as to services not apparent from the record. Therefore, the trial court properly set the fee based on the record without requiring additional evidence as to the amount of services performed.
As to evidence on the value of the services, testimony of an expert is admissible and perhaps helpful, but is not essential. The trial judge, in view of his experience at the bar and on the bench, is qualified to determine the reasonable value of an attorney's services, although he would require the assistance of expert testimony in setting the fee of an architect or a physician.
*311 The trial judge fixed the fee at 331/3% of the $622.41 note, or $207.47. Although the percentage rate is higher than that set in other cases, such as Moore Steel, Inc. v. Clear Lite Window Co., 178 So.2d 376 (La.App. 4th Cir. 1965), the fee in terms of dollars is not excessive and does not constitute an abuse of discretion.

INCIDENTAL DEMANDS
Jones first testified that the business owed no debts on February 1, but later in answer to questions about specific amounts stated that he did not remember whether or not there were unpaid balances on that date. Bryant produced invoices (which constituted hearsay evidence introduced without objection) that indicated balances due on or before February 1.
The trial judge found that certain of the debts paid by Bryant were in fact owed by Jones and Lemoine, but that Bryant failed to prove the other debts were incurred before he took over the business. In order to review this judgment, it is necessary for us to examine each debt denied by the trial judge.[1]
Jones had rented a piano from Hall Piano Company for $50.00 per month. Bryant introduced a check to Hall in the amount of $58.00 dated March 4 and an invoice dated March 2, stating that "This balance was due on January first 1968." Inasmuch as Jones introduced a $50.00 check to Hall dated January 29, the trial judge ruled that Jones' account had been paid through that date. However, the invoice constituted sufficient proof that after Jones' payment, there was still a balance of $58.00 which had been overdue since January 1. Furthermore, Bryant testified without contradiction that he did not continue renting from Hall after he took over the business. This item should have been allowed.
A $55.86 debt to the Times Picayune was denied in part on the basis that Jones paid $44.47 on January 29 and the itemized invoice did not reflect a credit for the payment. Nevertheless, the bill represented a charge due by Jones and Lemoine which Bryant was compelled to pay, irrespective of other charges paid by Jones. This item should have been allowed in full.
Chalmette Linen Service's invoice indicated a balance forwarded on January 31 of $34.15. This was disallowed on the basis that Bryant actually took over the business two or three weeks before the February 1 agreement and failed to prove the debt pre-dated his take-over.
Bryant had refused to execute the agreement until he was assured all debts were paid. On January 29 Jones issued checks in payment of numerous bills, and on February 1 the parties executed the agreement transferring the business and releasing the lease obligations. Jones admitted this date was "when I got out of business." Even if Bryant did begin operating the business a few days or a few weeks before the effective date, Jones and Lemoine impliedly agreed to pay all continuing business debts through the date of the transfer. Under the circumstances of this case, the effective date of the transfer, and not the date of physical take-over, should determine which party is responsible for the normal, continuing business expenses. This item should have been allowed.
The same reasoning applies to the New Orleans Disposal Service bill. The January monthly charge of $12.00 should have been allowed, in addition to the $60.00 due for service prior to January.
Bryant introduced a check dated July 9, 1968 to Louisiana Power & Light Company and a letter from that company. The letter informed Bryant that a deposit refund check, endorsed by Jones, could not *312 be credited to Bryant's present account, since payment on the July 9 check had been stopped and a new check issued to Jones at another address. The trial judge correctly concluded that Bryant did not prove this payment represented a debt of the former lessees which he had been compelled to pay, but rather indicated that the lessees' account with that creditor had been fully settled.
The final claim is for two payments made to Jefferson Parish and the State of Louisiana. Bryant testified that he was unable to get a liquor license from the Parish because Jones had failed to pay taxes due "prior to February 1." Bryant couldn't contact Jones but explained the situation to Lemoine. Bryant then issued a check dated March 14, 1968 to Lemoine, who cashed the check and paid the overdue taxes. Shortly thereafter, State tax collectors sought taxes due by Jones and Lemoine. Bryant issued another check, dated April 2, 1968 in the amount of $179.49, to Lemoine, who endorsed it to the business, which in turn paid the taxes owed to the State. The trial judge held that Bryant failed to prove the taxes were assessed for the period during which the lessees operated the business.
The record is not precisely clear on the point. However, Bryant clearly testified that the taxes were due for a period prior to February 1, and neither Jones nor Lemoine contradicted this. Furthermore, Lemoine affirmatively answered a question as to whether he used the proceeds of the check to "pay the sales tax that was due by you two for the business." Although Lemoine was confused as to why this procedure was used, Bryant's uncontradicted testimony and the corroborative evidence preponderate in favor of a conclusion that the payments were for obligations incurred while Jones and Lemoine were operating the business. The rule that the judgment of the trial court will not be disturbed unless manifestly erroneous is not applicable here, where the question is one of sufficiency and preponderance of the evidence, rather than an issue of resolving conflicting testimony or determining credibility of witnesses. Blue Streak Enterprises v. Cherrie, 263 So.2d 734 (La.App. 4th Cir. 1972).

DECREE
The judgment did not adjudicate the incidental demands, but rather awarded judgment on the principal demand subject to a credit. More properly, there should have been separate adjudications of each demand, particularly since a new party was brought into the action by the third party petition.
Accordingly, the judgment of the trial court is amended and recast as follows:
It is ordered, adjudged and decreed that there be judgment in favor of Curtis E. Jones and against Jack Bryant in the sum of Six hundred twenty-two and 41/100 ($622.41) Dollars, plus attorney's fees in the amount of $331/3% of the amount of the judgment, together with legal interest on each installment from the date due until paid;
It is further ordered, adjudged and decreed that there be judgment in favor of Jack Bryant and against Curtis E. Jones and Gerald Lemoine, in solido, in the sum of Seven hundred and 11/100 ($700.11) Dollars, plus legal interest from February 1, 1968 until paid;
It is further ordered, adjudged and decreed that each party bear his own court costs.
Amended and recast.
NOTES
[1] There was no appeal from the judgment awarding Bryant credit in the amount of $172.00.