411 So.2d 1091 (1982)
Virginia Patterson, Wife of/and Sidney J. PATTERSON, Jean Mayhall, Wife of/and Lester Mayhall and Irma Pitre
v.
Charles A. GARIC, III, d/b/a Orlandia Storage Warehouse and ABC Insurance Company.
No. 12324.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1982.
Rehearing Denied April 16, 1982.
*1092 Delery, Fox & Michaelis, Winifred M. Delery, New Orleans, for plaintiffs-appellees.
Schafer & Schafer, Ivan David Warner, III and Andree Pitard, New Orleans, for defendants-appellants.
Before REDMANN, GULOTTA and BARRY, JJ.
GULOTTA, Judge.
Plaintiff-homeowners filed this suit against an adjoining landowner, Charles A. Garic, III, d/b/a Orlandia Storage Warehouse, and Garic's insurer, for flood damage. From the judgment in favor of plaintiffs, defendants have appealed. We reverse.
In oral reasons the trial judge concluded that Garic's warehouse construction had disrupted the natural flow and equal distribution of rain water draining to the rear of his property to the extent that he "materially increased the burden upon the subservient landowners" causing flood damage to plaintiffs' homes adjoining the rear of his property. The trial judge noted that Garic had constructed his property in violation of the parish building code with the result that approximately 22% of the water from his property went on to plaintiffs' property. He further stated that if defendant would have adhered to the original plan whereby water on his property would have drained from the center of his property to St. Bernard Highway damage to plaintiffs would not have resulted.
On appeal, defendants contend plaintiffs have failed to show causation between the construction and the flood damage. According to defendants, damages resulted from the abnormally high May 3, 1978 rainfall, an unforeseeable "act of God", and not from any alteration of the warehouse plans or from a violation of the St. Bernard Parish Police Jury Building Code.
Garic's property consists of a little over two acres fronting on St. Bernard Hwy. The rear of defendant's property adjoins the rear of plaintiffs' houses. In early 1978, Garic completed construction of a mini-storage warehouse complex consisting of a concrete slab with streets and storage buildings. To the rear of Garic's property a walkway five feet wide and over 600 feet long abuts on plaintiffs' properties. Garic's original plan of construction envisioned a sub-surface drainage system whereby 100% of the water falling on his property would drain into a 15 inch pipe located in the center of his property tying into the drainage system of St. Bernard Hwy.
However, because there was no sub-surface drainage readily connectible to his proposed line, shallow concave channels in the slab, "swales", were constructed so that the water flowed from the surface of the property to St. Bernard Hwy. and into a drainage ditch.[1] Garic additionally sloped a portion of the slab in the rear of his property so that water drained into an existing catch basin near plaintiffs' property that connected to a sub-surface system on Perrin Dr. Plaintiffs' houses front on Perrin Dr. The catch basin had been installed by the parish before Garic constructed his warehouse and it took the flow of water from a drainage servitude or ditch to the rear of plaintiffs' properties. A pump had been installed on Perrin Dr. to pump the water from the drainage easement. This pump also had been constructed before Garic started construction.
It is undisputed that some water from the roof of Garic's buildings fell directly on a concrete walkway five feet wide and over 600 feet long abutting directly on the rear of plaintiffs' property. It is undisputed also, that the natural slope of the land in the area is from St. Bernard Hwy. down to Perrin Dr.
*1093 Plaintiffs testified that the flooding on May 3, 1978 occurred during a heavy rainfall when water "gushed" from the rear of Garic's property into their homes. According to plaintiffs, they had suffered no problems prior to Garic's construction. None had encountered any flooding in his home since the May 3 rainfall, although on three or four occasions during a heavy rain their rear patios and back yards were flooded.
Thomas Reed, an expert in civil engineering and land surveying, testified that Garic had violated the St. Bernard Parish Building Code in constructing his warehouse complex higher than the adjoining property without making arrangements to control water from flowing onto the lower elevation and in failing to have guttering to prevent water draining from his roof to plaintiffs' property.
Although Reed had not measured the grade of the Garic property, he had observed the flow of water during a rainfall and testified that 2/3 to 3/4 of the water on the slab flowed to St. Bernard Hwy., with the rest to the rear in the direction of plaintiffs' homes. To put it another way, according to Reed, 0.5 acres of the 2.2 acre tract drained to the rear catch basin, with the remainder going toward St. Bernard Hwy. The water falling off the roof onto the rear walkway, however, drained "straight back" onto plaintiffs' properties. Significantly, Reed acknowledged that the May 3, 1978 rainfall was a "hundred-year-rainfall" and pointed out that he was not saying that Garic's violation of the building code had caused water to enter plaintiffs' homes. He had no opinion of what had caused that flooding.
Steven Estopinal, an expert in civil engineering called by the defendants, had measured the grade of the property. He testified that 97% of Garic's property drained toward St. Bernard Hwy. with the remaining 3% (or .06 acres) draining to the rear catch basin. He further stated that a fractional percentage of water from the roof drained directly onto the walkway and uniformly onto plaintiffs' properties.
According to this expert, the May 3, 1978 rainfall was an "extreme rainfall condition" and the "worst in 100 years". Estopinal was of the opinion that Garic's violation of the building code encompassed such a small area that the amount of water illegally dumped on plaintiffs' properties could not have been enough to do any damage. According to Estopinal, the drainage system of St. Bernard Hwy. failed on May 3, 1978, and a "wall of water" fed by the St. Bernard Hwy. flowed across Garic's property and flooded plaintiffs' homes located in the path of the lower elevation of Perrin Dr. This expert testified that any water contributed by Garic's construction was "absolutely insignificant" and just a minute fraction of the water coming from other sources along the highway.
Estopinal felt the rear catch basin would have, under normal conditions, been able to handle the flow of water, but that the St. Bernard Hwy. system was "grossly inadequate" to handle the May 3 rainfall. Although the sub-surface drainage plan originally envisioned by Garic would have taken 100% of the water from his property to the highway, Estopinal testified that on May 3, the highway was flooded and sub-surface drainage would not have made any difference. According to Estopinal, under normal conditions Garic's warehouse building did not increase the chance of flooding.
Where recovery is based on the obligations of an owner under LSA-C.C. Art. 656,[2] as in any case where recovery is sought based on owner's use of the property that causes damage to a neighbor,[3] the injured party must establish causation between *1094 that which the owner did or failed to do and the damage resulting from the defendant-owner's act or omissions. See South Central Bell Tel. Co. v. Hartford Acc., 385 So.2d 830 (La.App. 1st Cir. 1980); Russell v. Windsor Properties, Inc., 366 So.2d 219 (La.App. 2d Cir. 1978).
In the instant case, resolution of the causation issue does not involve the acceptance of the testimony of one expert and the rejection of another based on credibility. The issue here is not credibility of the evidence but sufficiency of evidence. The expert testimony is not contradictory. In this case the manifest error rule does not apply. Blue Streak Enterprises v. Cherrie, 263 So.2d 734 (La.App. 4th Cir. 1972); Jones v. Bryant, 283 So.2d 307 (La.App. 4th Cir. 1973).
The undisputed testimony of the experts is that the greater and predominant amount of water that accumulated on the defendant's slab flowed in the direction of St. Bernard Hwy. (2/3 to 3/4 of the amount according to Reed, and 97% according to Estopinal) and away from plaintiffs' properties. Neither of the experts stated or gave an opinion that the construction of the warehouse was responsible for the flooding of plaintiffs' property on the day of the May 3 flood. Estopinal's testimony in this regard was that the amount of water accumulating on plaintiffs' property from the warehouse construction was "absolutely insignificant." Even Reed, plaintiffs' expert, stated that he had no opinion of what had caused the flooding of the homes. It is undisputed that the natural flow of water, particularly in a heavy rainfall, is from the higher St. Bernard Hwy. elevation to the lower Perrin Dr. location where plaintiffs' homes are located.
The evidence considered, we conclude that it is more probable than not that the damage to plaintiffs' property was caused not from the construction of defendant's warehouse but from the relative elevations of St. Bernard Hwy. and Perrin Dr. resulting in the flow of water to plaintiffs' property on the day of this extremely heavy rainfall. Plaintiffs simply failed to prove causation between Garic's construction and the flood damage.
Accordingly, the judgment of the trial court is reversed and set aside. Judgment is now rendered in favor of defendants, Charles A. Garic, III, d/b/a Orlandia Storage Warehouse, and Security Insurance Group of Hartford, dismissing plaintiffs' suit. Costs to be paid by plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] The undisputed testimony of defendants' expert was that the St. Bernard Highway system did not incorporate sub-surface drainage into which Garic could have connected the drain.
[2] LSA-C.C. Art. 656 reads as follows:

"Art. 656. Obligations of the owners. The owners of the servient estate may not do anything to prevent the flow of water. The owner of the dominant estate may not do anything to render the servitude more burdensome."
[3] LSA-C.C. Art. 667 reads as follows:

"Art. 667. Limitations on use of property. Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."