664 So.2d 1335 (1995)
Paul HAWORTH and David Dawson
v.
Lester A. L'HOSTE, Jr., and Donald W. Eppley.
No. 95-CA-0714.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1995.
Rehearing Denied January 17, 1996.
*1337 William J. Dutel, Richard R. Schulze, New Orleans, for Paul Haworth and David Dawson.
W. Eric Lundin, III, Jerry J. Lobrano, Belle Chasse, for Lester A. L'Hoste, Jr.
Brian J. Waid, Bubrig and Waid, Buras, for Donald W. Eppley.
Before BYRNES, PLOTKIN and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Paul Haworth and David Dawson sued Lester A. L'Hoste, Jr. and Donald W. Eppley on 7 March 1985 alleging that L'Hoste and Eppley, as owners of property adjacent to property owned by Haworth and Dawson, constructed a levee that encroaches on petitioners' property and alters drainage patterns causing water to stand on petitioners' property, and, during construction and moving of the levee, damaged petitioners' timber. Petitioners sought injunctive relief against the levee encroachment and change in drainage, as well as damages for depreciation in the value of petitioners' property. Haworth and Dawson amended their petition to add their wives and, subsequent to Dawson's divorce and pursuant to a transfer of rights *1338 between the spouses, Dawson was substituted for his wife. Petitioners again amended the petition to add a claim under La.R.S. 3:4278.1 for civil damages of three times the fair market value of trees cut in a wilful or intentional manner, and for attorneys' fees.
L'Hoste and Eppley filed exceptions of no right of action, contending that Eppley had no interest in the property adjacent to petitioners' property[1], and that petitioners did not acquire the property until 20 days after the alleged damage took place. Petitioners appealed the trial court's judgment maintaining the exceptions, and this Court reversed, allowing petitioners to amend their petition to add their predecessors in title as parties plaintiff and holding that Eppley was an owner in indivision of the defendants' property at the time the pond and levee were constructed. The amending petition was duly filed. Pursuant to a Donation of Litigious rights, Dawson and the Haworths were substituted for their predecessors in title. Eppley filed a cross-claim against L'Hoste for contribution and/or indemnification.
The case was tried on the merits, and at the close of plaintiffs' case, the trial court granted defendants' Motion for Involuntary Dismissal, pursuant to La.C.C.P. art. 1672, dismissing plaintiffs' petition, as amended, and dismissing Eppley's cross-claim as moot. From that judgment, the Haworths and Dawson appeal. We affirm.

STATEMENT OF FACTS
On 9 July 1981, Patricia and Donald Eppley and Linda and Lester L'Hoste, Jr. acquired in indivision Tracts # 8 and # 9, Greenwood Plantation, for $225,000. On 19 April 1984, the property was partitioned, and the Eppleys transferred their interest in Tract # 8 to the L'Hostes, and the L'Hostes transferred their interest in Tract # 9 to the Eppleys.
In March and April, 1984, L'Hoste caused to be constructed on Tract # 8 a crawfish pond consisting of a small dike, a portion of which encroached on Tract # 7, then owned by petitioners' predecessor in title.
On 29 August 1984, the Dawsons and the Haworths acquired Tract # 7, approximately 474.4 acres located adjacent to the L'Hostes' Tract # 8, for $580,000. In connection with the sale, Stephen Estopinal surveyed the property on 9 August 1984. His survey shows the crawfish pond and dike and contains the following Note 5: "Small dike approximately 3' high and 10' wide follows the boundary line in such a meandering way as to encroach slightly onto Lot 7 in some locations. Maximum encroachment occurs 10' or so from the east end of Lot 7 and is about 10'." The Dawson/Haworth property adjoins the L'Hoste property on the southern end. The western boundary of the Dawson/Haworth and L'Hoste properties fronts on Louisiana Highway 39 and the Mississippi River.
From 29 March 1989 through 2 June 1989, the Dawsons' and Haworths' predecessors in title transferred their litigious rights to damages, if any, caused by the encroaching dike to their vendees.
APPELLANTS' ASSIGNMENTS OF ERROR: The trial court erred in dismissing petitioners' action pursuant to La.C.C.P. art. 1672; it erred in finding that petitioners failed to show a right to relief, to prove defendants' liability by a preponderance of the evidence, and to prove by a preponderance of the evidence that petitioners' property was damaged as a result of the defendants' actions.
The Code of Civil Procedure gives a trial judge in a non-jury trial the discretion *1339 upon the motion of any party to determine the facts after plaintiff has completed the presentation of his evidence, and render judgment against the plaintiff and in favor of the moving party. La.C.C.P. art. 1672. Such a motion should be granted only "when the plaintiff has failed to establish his case by a `preponderance of the evidence.'" Webb v. Smith, 555 So.2d 556, 557 (La.App. 4th Cir. 1989).
In Morgan v. City of New Orleans, 94-0874 (La.App. 4 Cir. 12/15/94), 647 So.2d 1308, 1310, writ denied 95-0150 (La. 3/30/95), 651 So.2d 859, this Court set out the relevant criteria for review of a trial court judgment granting this motion:
1. The judge must weigh and evaluate all the evidence presented to that point and determine whether the plaintiff established a prima facie case by a preponderance of the evidence.
2. Unlike a motion for directed verdict in a jury trial, the trial judge reviews the evidence without any special inference favorable to the party opposed to the motion.
3. A dismissal under Article 1672(B) should not be reversed absent manifest error.

LANDOWNER'S LIABILITY
A person may do whatever he pleases with his land, but he cannot cause any work to be done which may cause damage or deprive his neighbor of the right to enjoy his property. La.C.C. arts. 667-669 place limitations on the rights of owners by setting out principles of responsibility applying the doctrine of sic utere tuum ut alienum non laedas, which requires an owner to use his property in such a manner as not to injure another. Inabnet v. Exxon Corp., 93-0681 (La. 9/6/94), 642 So.2d 1243, 1250-51; 4 A.N. Yiannopoulos, Louisiana Civil Law TreatisePredial Servitudes, secs. 25, 33 (1983). Article 667 prohibits uses which cause damage to neighbors or deprive them of the enjoyment of their property, while Article 668 permits uses which merely cause neighbors some inconvenience. Article 669 allows suppression of excessive inconveniences caused by industrial emissions and the like, and provides that the excessiveness of an inconvenience is to be determined in the light of local ordinances and customs. Yiannopoulos, supra at sec. 34; Inabnet v. Exxon Corporation, 642 So.2d at 1251. In Inabnet, the Louisiana Supreme Court held that La.C.C. art. 2315 establishes delictual responsibility for injury to others through "fault," a term encompassing violations of standards of conduct set out in the Civil Code and statutes to govern the responsibility of persons in certain relationships and arising out of certain activities. Id. In the context of neighborhood relationships, the courts refer to Articles 667-669 to determine the conduct which constitutes "fault" under Article 2315. Id. Liability generally has been imposed for fault under Article 2315 by analogy to the conduct required by Articles 667-669, despite the absence of negligence in the proprietor's conduct. Inabnet v. Exxon Corporation, 642 So.2d at 1252.
Where recovery is based on an owner's use of property that causes damage to a neighbor, the injured party must establish causation between the owner's action or inaction and the damage resulting from the defendant-owner's act or omission. Patterson v. Garic, 411 So.2d 1091, 1093-94 (La.App. 4th Cir.1982), writ denied 415 So.2d 950 (La. 1982).
In his reasons for judgment, the trial court reviewed and evaluated the evidence submitted by the petitioners. In our review of his conclusions, we apply the manifest error standard.
"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... [A]ppellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands *1340 great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... [Where] a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
We are instructed that before a finding may be reversed, we must find from the record that a reasonable factual basis does not exist for the finding, and that the record establishes that the finding is manifestly wrong. Lewis v. State through Dept. of Transp. and Development, 94-2370 (La. 4/21/95), 654 So.2d 311, 314; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts[2], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La. 2/20/95), 650 So.2d 742, 745; Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216, 221 (La.1994).
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
We find the record furnishes reasonable factual basis for the trial court's findings. Desire Schmidt and Richard Talluto testified from their experience having hunted over the property prior to 1984. Schmidt described a maret, or wet area between two ridges that had been on the property for many years, and described the property as draining from the frontage at the highway and River toward the 40 arpent line at the back of the property. He described additional drainage to the Dufau Canal provided by Mosquito Control ditches that were added in the 1960's as well as drainage in the 20 arpent canal running downward through a culvert to the Dufau Canal. He testified without contradiction that the Dufau Canal's spoil levee prevented water from draining downriver, and most of the water drained into the rear of the property. Talluto added that he has never noticed flooding north of the Dufau Canal. The trial judge found that Dawson's testimony established that the 20 arpent ditch drains into the Dufau Canal, but the water of which he complains cannot drain into the 20 Arpent ditch because of a ridge. There was no evidence that this ridge was in any way caused by the defendants. Dawson testified that he could not tell if the crawfish pond dike prevented his property from draining south, and admitted that portions of the dike had been removed. While Dawson claimed that the crawfish dike impedes the drain of his property, the preponderance of evidence contradicts his allegation. L'Hoste testified that in 1985 or 1986, L'Hoste dug a ditch that drains toward the cross-ditch at approximately the 20 arpent line. This ditch, extending 800-1000 feet east from the cross-ditch lies on L'Hoste's property (Tract # 8). *1341 Kenneth Wheeler, a licensed arborist, confirmed the existence of this ditch. Thus, water draining from the Dawson/Haworth property (Tract # 7) onto Tract # 8 would drain into that ditch and from that ditch into the cross-ditch and eventually to the Dufau Canal. Haworth testified that in the first five years, the property flooded during major rains and, when asked why he hadn't dug any ditches to increase drainage off the property, replied "Because we haven't."
Wheeler testified further that in June, 1985, in connection with his survey of alleged tree damage, Dawson did not mention any drainage problem, and Wheeler's inspection revealed no need to check the trees for excessive moisture. While he testified that during his visit to the property in January 1993 he saw standing water, and that he saw thin, defoliated trees when he visited the property in 1994, he noted that had the water been standing for three months each year over a period of seven years or more (that is, from the time the crawfish pond and dike were constructed), nothing but willow and cypress trees would have been growing in the area. Wheeler's testimony does not support petitioners' claim of water damage to timber. John E. Walker, a civil engineer and land surveyor, testified that when he resurveyed the property in 1989 he saw no water, and that his observation indicated that the property was draining. Based upon this testimony, the trial court concluded that the petitioners failed to prove by a preponderance of the evidence that the construction or reconstruction of L'Hoste's crawfish dike adversely interfered with drainage on petitioners' property. We do not find this conclusion to be manifestly erroneous.
With respect to the petitioners' contention that the defendants destroyed timber growing adjacent to the crawfish dike, the trial judge reviewed the testimony of the arborist, Mr. Wheeler. The trial judge found that Wheeler's evidence was insufficient to support an award of damages. He based this conclusion on the facts that Wheeler did not measure the fallen trees, could not tell whether they had been located on petitioners' property, and did not determine how many trees had been felled. Further, there is no testimony as to when the trees were uprooted or by whom. The court found Wheeler's evaluation methodology to be faulty as well. We note that Wheeler's area of expertise is that of an arborist, one who is trained to recognize and treat diseases of trees. His tenth grade education and previous qualification in court as an expert in tree-trimming and in a case involving a tree that extended over a property line do not qualify him as a forester, one who is qualified to measure and evaluate timber. Wheeler admitted at trial that he was not sure where he was when he made his four hour inspection, that he was "turned around" and was unsure whether he was looking upriver or downriver, although he believed that the felled trees were on the south side of the levee. Were that the case, the trees he valued were located on the L'Hoste property. Wheeler made no species reduction, no reduction for location of the trees, and no reduction for the condition of the trees, all of which were required by the process to which Wheeler testified. Slaughter, who actually cleared the property line, was the only witness who offered direct testimony concerning the clearing process. He testified that he removed at most twelve small trees in the process, most of which were located on L'Hoste's property. The trial court correctly refused to speculate as to the number, species, location and condition of the trees observed in Wheeler's inspection and evaluation. The trial court correctly noted that there was no evidence that the fallen trees were knocked down during construction or reconstruction of the crawfish dam, or the extent of any damage caused by that work. Our review of the record does not support a finding that this conclusion is manifestly erroneous or clearly wrong.
The court found further that there was no proof that the resurvey of the property was necessitated by L'Hoste's work, or that petitioners suffered loss of enjoyment of the property. The trial court found that the principal purpose for which the petitioners *1342 acquired the property was to build a house in the front of the property, and L'Hoste's work in no way affected that purpose. Our review of the record leads us to conclude that the trial judge was not manifestly erroneous in that conclusion.
Donald Hamby, a real estate appraiser, testified in support of the petitioners' claim of diminished value. The court found that although he testified to a $200,000 reduction in value of about 70 acres of the 230 he appraised as "wetlands" rather than woodland, there was no testimony that the land was marsh because of any act of the defendants. Hamby testified that he believed a portion of the property was salt marsh since the construction of the Scarsdale Levee District project in the 1930s. Hamby testified that he had no knowledge of the property's condition when the petitioners bought it. His valuation was based on the assumptions given him by the petitioners and their former attorney, Mr. Faulkner. Hamby testified that Dawson told him defendants had built a crawfish pond on their land that prevented drainage on Dawson's land, and Hamby did not express an opinion on whether Dawson's statement of causation was correct. At no time did Hamby go on the defendants' property to examine the crawfish pond and dike. We find no manifest error in the trial court's conclusion that petitioners failed to establish that defendants' actions caused a diminution in the value of petitioners' property.
The trial court found that petitioners failed to establish by a preponderance of the evidence wilful and intentional destruction of trees giving rise to liability under La.R.S. 3:4278.1. Our review of the testimony supports that conclusion. This statute, which authorizes treble damages, is punitive and must be strictly construed, so that petitioners must establish by clear evidence a violation of the statute by flagrant disregard of clearly marked ownership lines. Jordan v. Stevens Forestry Services, Inc., 430 So.2d 806, 809 (La.App. 3d Cir.1983). The Jordan court noted that the treble damage provision was principally aimed at tree pirates who cross clearly marked ownership lines and cut timber or remove timber. Petitioners presented no evidence of a clearly marked property line or of bad faith on the part of the landowner. Petitioners failed to prove their claim under the statute.

CONCLUSION
Our review of the record on appeal shows that the trial court's judgment dismissing petitioners' petition pursuant to La.C.C.P. art. 1672 is not manifestly erroneous.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissenting with written reasons:
I respectfully dissent from the majority's affirmation of the trial court judgment granting a motion for involuntary dismissal against the plaintiffs and in favor of the defendants. The trial court based his decision on his determination that, even if the plaintiffs were damaged by the defendants' trespass onto their property to construct the dike for the crawfish pond, the plaintiffs failed to prove the amount of the damages. The majority agrees with that reasoning.
I disagree. As the majority notes, the primary question to be asked when a trial judge considers a motion for involuntary dismissal is whether the plaintiff has established a prima facie case by a preponderance of the evidence.
My review of the record convinces me that the plaintiffs did indeed establish a prima facie case of damages to their property caused by the trespass by a preponderance of the evidence. The pictures filed in the record of this case show an cleared area behind the dike of the crawfish pond which is wide enough to allow the passage of a bulldozer, or even a car. Beyond this cleared area is a wooded area which contains numerous trees and shrubs of various sizes. The plaintiff has also proven by a preponderance *1343 of the evidence that the dike itself, and thus the cleared area, extends over the property lineas much as ten feet in one location. This evidence by itself is sufficient to establish a prima facie case by the preponderance of the evidence and thus defeat a motion for involuntary dismissal.
A study of the recent jurisprudence concerning the tort of encroachment or trespass reveals that persons injured by a trespass are entitled to "full indemnification for the damages caused." Britt Builders, Inc. v. Brister, 618 So.2d 899, 903 (La.App. 1st Cir. 1993). Moreover, the fact that the amount of damages cannot be "exactly estimated" does not defeat the recovery; courts are given "reasonable discretion to assess [the damages] based upon all of the facts and circumstances." Id. Damages are recoverable even from a trespasser who acts in good faith. Id. See also Lavergne v. Lawtell Gravity Drainage District No. 11, 562 So.2d 1013 (La.App. 3d Cir.1990).
Moreover, the most recent Louisiana cases interpreting the "nuisance" articles, La.C.C. arts. 667-669, indicate that the plaintiffs have also established a prima facie case for recovery under those articles. In Butler v. Baber, 529 So.2d 374 (La.1988), the Louisiana Supreme Court noted that liability under La. C.C.P. arts. 667-669 is a type a strict liability, a fact which relieves the plaintiffs from the burden of proving "fault" on the part of the defendants. "Fault under 667 is damage done to neighboring property, and relief under 667 requires, therefore, only that damage and causation be proven," the court said. Butler, 529 So.2d at 381. The plaintiffs in the instant case have unquestionably prove both damage and causation; thus they are entitled to recover. For that reason also, the trial court improperly dismissed the plaintiffs' case on a motion for involuntary dismissal.
Accordingly, I would reverse the trial court judgment and remand to the trial court to allow the defendants to present their case.
NOTES
[1] Eppley contends that he is not a proper party defendant, having partitioned the property with L'Hoste on 19 April 1984. In the partition, L'Hoste retained Lot 8 upon which the crawfish pond was constructed and Eppley took Lot 9. This issue was decided by this Court:

[A]t the hearing on those motions L'Hoste and Eppley placed construction of the pond in the later part of March or early April, 1984 which was prior to their partition. Eppley, an owner in indivision of Lot 8 at the time of the construction of the levee, was a proper party defendant under C.C. art. 667. Eppley's exception should have been denied.
Haworth v. L'Hoste, No. 90-CA-0930 (La.App. 4th Cir.1991), 590 So.2d 123, an unpublished opinion. Although unpublished, this opinion is properly cited in this continuing and related litigation. Roberts v. Sewerage and Water Board of New Orleans, 634 So.2d 341 (La.1994).
[2] See, LSA-Const. Art. 5, section 10(B).