230 So.2d 402 (1970)
Elwood FONTENOT, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.
No. 2954.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1970.
Rehearing Denied February 4, 1970.
Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by Burgess E. McCranie, Jr., Lafayette, for defendant-appellee.
Before TATE, HOOD, and MILLER, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Elwood Fontenot against his employer's insurer, Liberty Mutual Insurance Company. Plaintiff alleges as a basis for his claim that he is totally and permanently disabled. Judgment was rendered by the trial court in favor of defendant, and plaintiff has appealed.
On this appeal, plaintiff abandons his claim that he is totally and permanently disabled. He contends, however, that the trial court erred in failing to award him compensation benefits at the rate of $35.00 per week for the loss of a foot. Alternatively, he contends that he is entitled to recover *403 the benefits provided in the Workmen's Compensation Act for: (1) The permanent partial loss of the use or function of a foot; or (2) for the loss of a great toe; or (3) for total disability from the date of the accident until February 10, 1969.
The accident which precipitated this suit occurred on October 8, 1968, while Fontenot was working as a common laborer for defendant's insured, Valley Canning Company, in Evangeline Parish. On that date, while plaintiff was in the course of his employment, a tub of sweet potatoes weighing about 700 pounds fell on the great toe of his right foot and injured that toe. Plaintiff was examined by Dr. Reed A. Fontenot, a general practitioner, immediately after the accident occurred, and he was treated by that physician for several weeks thereafter. He performed no work of any kind from the date of the accident until December 1, 1968. He obtained employment as a truck driver for Evangeline Wholesale on the last-mentioned date, and he held that job until February 13, 1969. Thereafter, during the latter part of March or the first part of April, 1969, he obtained employment as a galley hand, in connection with offshore oilfield work, and he has continued to do that type of work since that time.
Fontenot testified that his injured toe has bothered him continuously since the date of the accident, that he has been unable to wear a shoe with a steel cap over the toe, and that his right great toe hurts when he puts weight on it. He stated that he was able to perform his duties as a truck driver for Evangeline Wholesale because he did not have to stand on his feet very much, and that he quit that job because "I put it again on my toe, I couldn't stand it." We interpret this statement to mean that something else fell or came to rest on his injured toe, and that it caused him to suffer pain.
Dr. Fontenot is the only medical expert who testified in this case. He found that as a result of the accident plaintiff's toe nail had been knocked out, a part of the nail bed was avulsed, the toe was lacerated on each side and the bone was exposed. There were no fractures of any of the bones of the foot or toes. The doctor brought the flesh on each side of the toe together and applied sutures. In due course the toe healed, but only a small part of the toe nail remains, and this condition is permanent.
The treating physician testified that he last treated plaintiff on December 13, 1968, and that he instructed him at that time to return on December 26 for further examination or treatment. The doctor felt that plaintiff had not quite recovered from his injury by December 13, but he anticipated at that time that plaintiff would be recovered by December 26, and that he would be able to discharge him at that time. Plaintiff did not return on December 26, as requested. Instead, he saw Dr. Fontenot next on February 5, 1969, and at that time the doctor found that Fontenot had recovered and that he then was able to return to his original employment. The doctor stated that he told his bookkeeper to "send something in on it" and that pursuant to that instruction the "final bill and report" was sent in on February 10.
Dr. Fontenot concedes that the residual of plaintiff's injury, consisting of a short toe nail, will cause him some inconvenience and it may cause him some minor pain at times. He feels, however, that the inconvenience and discomfort which he does or may experience is temporary and is not disabling. He was unable to assign any permanent partial disability or partial loss of function to the toe or foot.
Plaintiff alleges that he has received "only about eight weeks of compensation" from defendant. At the trial he testified that he received only seven compensation checks of $35.00 each. Defendant alleges in its answer that it paid plaintiff compensation benefits covering a period of eleven weeks and two days following the accident, but no evidence of any kind *404 was presented to show that any such payments were made. The only evidence in the record relating to the amount of the compensation payments which were made, therefore, was the above admission of plaintiff. Payment or setoff is an affirmative defense which must be specially pleaded and proved by the defendant. LSA-C.C.P. Art. 1005; Mochitta v. Lemak, 165 So.2d 568 (La.App. 1 Cir. 1964). In the instant suit, we conclude from the evidence presented that plaintiff has received payment of compensation benefits for a period of only seven weeks from and after the date of the accident.
The trial judge stated in his written reasons for judgment that the only question presented was "whether or not plaintiff was disabled for a longer period than February 10, 1969," and he ultimately concluded that "the plaintiff failed to prove any disability whatsoever subsequent to February 10, 1969." On the basis of that conclusion, judgment was rendered by the trial court rejecting plaintiff's demands and dismissing the suit at his costs.
We find no merit to plaintiff's primary argument that he is entitled to compensation benefits of $35.00 per week for 125 weeks, under the provision of LSA-R. S. 23:1221(4) (g), based on a finding that he has sustained the loss of a foot. The evidence simply does not show that he has sustained the loss of a foot, or any impairment in the use or function of his foot, as a result of this accident.
For the same reason we reject plaintiff's first and second alternate demands. His first alternate demand is that he be awarded benefits of $10.00 per week for 125 weeks, under LSA-R.S. 23:1221(4) (o), on the ground that he has sustained the permanent partial loss of the use or function of his right foot; and his second alternate is that he be awarded compensation at the rate of $35.00 per week for 20 weeks, under LSA-R.S. 23:1221(4) (c), for the loss of a great toe. We find that plaintiff has not sustained the loss of a toe or the permanent partial loss of the use or function of a foot.
Plaintiff's third alternate demand is that he be awarded compensation benefits at the rate of $35.00 per week from the date of the accident until February 10, 1969, that being the date on which the final report of the treating physician was submitted. Fontenot contends that he was totally disabled within the meaning of the workmen's compensation act until February 10, 1969, and that he thus is entitled to recover under LSA-R.S. 23:1221(1) for temporary total disability during that period of time. He concedes that credit must be given for the payments which have been made.
The plaintiff in a workmen's compensation case has the burden of proving his claim with legal certainty by a preponderance of the evidence, as does the plaintiff in practically every other type of action. When his demand for compensation benefits is based solely on the ground that he suffers pain when he works, then he will be held to be disabled within the purview of the compensation act only if he suffers substantial pain. Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965).
We think the evidence establishes that plaintiff was totally disabled within the meaning of the compensation act from the date of the accident until December 26, 1968. The evidence does not show that he was disabled after the last-mentioned date. He, in fact, had been employed and was working on that date, and the fact that he did not return to his treating physician for further treatment or a check up on December 26, as requested, caused the doctor to assume, as we do, that he had recovered by that time.
Our conclusion is that plaintiff is entitled to recover compensation benefits at the rate of $35.00 per week from the date of the accident until December 26, 1968, that being a period of more than eleven weeks. Defendant, of course, is entitled to *405 credit for the payments which have been made.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of plaintiff, Elwood Fontenot, and against defendant, Liberty Mutual Insurance Company, condemning defendant to pay compensation benefits to plaintiff at the rate of $35.00 per week from October 8 until December 26, 1968, with legal interest on each payment from the time it became due until paid, subject to a credit of $245.00, representing payment of all compensation payments due during the first seven weeks of that period. Defendant also is condemned to pay all costs incurred in the trial court and on this appeal. The expert witness fee of Dr. Reed A. Fontenot is fixed at $50.00, and is taxed as costs.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.