297 So.2d 527 (1974)
Adolph HALL
v.
The GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC.
No. 5351.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1974.
Rehearing Denied August 1, 1974.
Writ Refused October 4, 1974.
Herman & Herman, Maury A. Herman, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, James L. Selman, II, New Orleans, for defendant-appellee.
Before LEMMON, J., and FEDOROFF and GAUTHIER, JJ. Pro Tem.
*528 LEMMON, Judge.
Plaintiff has appealed from a judgment dismissing his workmen's compensation suit.
The issues on appeal are (1) whether plaintiff proved he was disabled at time of trial from working as a switchman (driving a tractor-trailer and assisting in loading the trailer), and (2) if plaintiff was disabled, whether plaintiff proved his industrial accident (rather than an intervening automobile accident) caused the continuing disability.
On April 22, 1969 plaintiff was struck on the top of the head by the falling tailgate of his trailer. He received emergency treatment at Ochsner Foundation Hospital and was followed for a few days at Ochsner Clinic by an orthopedic surgeon, who did not appear at trial.
On May 2, 1969, Dr. Dean Echols, a neurosurgeon, took over the treatment, diagnosing a cerebral concussion and a neck sprain. At Dr. Echols' request, a neurologist performed clinical and electroencephalographic examinations, which revealed no evidence of physical disease of the brain. By June 30, 1969, when the treatment was "getting nowhere," Dr. Echols advised plaintiff to undergo physical thereapy, but plaintiff never consulted Dr. Echols again.
At trial Dr. Echols testified that plaintiff exhibited no neurological disorders[1] but did sustain a neck sprain, which was an orthopedic problem, and although he would not have advised plaintiff to return to work at the time of his last examination, he was certain at the time that plaintiff would eventually make a complete recovery. He stated his impression that plaintiff was consciously or subconsciously simulating disability.
Defendant then sent plaintiff to Dr. Morris Fisher, a general surgeon, who found limited rotation and flexion of the neck area. Dr. Fisher diagnosed a resolving cervical sprain, prescribed physical therapy, cervical traction and medication, and referred plaintiff for further evaluation to Dr. Carl Cullichia, a neurosurgeon, and Dr. R. C. Grunsten, an orthopedic surgeon.
Dr. Cullichia examined plaintiff on July 21 and found no evidence of neurological abnormality or disorder, although he confirmed the restricted motion which he classified as an orthopedic problem.
On July 24, 1969 Dr. Grunsten found plaintiff's flexion and extension motion were restricted and diagnosed a resolving neck sprain, which he did not expect to produce any residual disability. When plaintiff related the history to Dr. Grunsten, he mentioned that he had recently been involved in a rear end collision (on July 18, 1969) and that his neck had become swollen after the impact, although his symptoms had generally remained the same. Dr. Grunsten opined that the flexion deficit he found would not be expected from a rear end collision, although the limited extension would likely result from such an accident. Dr. Grunsten instructed plaintiff to return to Dr. Fisher's care.
Dr. Fisher then saw plaintiff 18 times through Friday, September 5, 1969, at which time plaintiff complained only of occasional headaches and decreasing neck pain. Dr. Fisher released plaintiff for light duty work, stating that he was not capable of doing his regular work. However, when his employer had no light work available, plaintiff reported back to Dr. Fisher on Monday, September 8, 1969, whereupon Dr. Fisher reexamined him and authorized him to return to his full duties.
In the meantime, plaintiff had consulted Dr. Stuart Phillips, an orthopedic surgeon, on August 14, 1969. Dr. Phillips found paravertebral muscle spasm and a decrease *529 in cervical lordosis and disagnosed a disfunction of the cervical spine. Over the next eight months of treatment plaintiff improved from time to time, and Dr. Phillips advised him to attempt some light work. Plaintiff attempted to work for a sugar company, picking up cane which fell from tractors, but lasted less than two weeks. He later managed a produce shed for his father-in-law, but was unable to assist in the loading and unloading operations, although he tried. Dr. Phillips testified that on three or four occasions plaintiff attempted to return to work as instructed and on each occasion he returned with positive physical findings.
On February 27, 1970 Dr. Alvin Cotlar, a general surgeon, examined plaintiff in consultation with Dr. Phillips, primarily for a palsy condition. Dr. Cotlar reported tenderness in the muscle regions along the cervical spine, tenseness of the muscles of the left paracervical spinous area, increased tone in the left trapezius muscle, limitation on the left lateral rotation and limitation on hyperextension of the head. Dr. Cotlar diagnosed a probable compression injury (as caused by a blow to the top of the head) of the cervical spine and a facial weakness secondary to a concussion.[2] At Dr. Cotlar's request plaintiff underwent special testing and also was examined by Dr. Peter Janetta,[3] a neurosurgeon, and Dr. Mervin Trail,[4] an ear, nose and throat specialist. Dr. Cotlar checked plaintiff four more times, and on the date of his last examination on June 15, 1970, he found no change and considered the cervical injury to be permanent. Dr. Cotlar further expressed his opinion that the blow to the top of the head caused the injury and that plaintiff was unable to drive a heavy tractor-trailer or to do any heavy loading and unloading.
During the summer of 1970 plaintiff went to North Carolina, where he worked for his uncle as a janitor in a trailer park. He also attempted driving a dump truck and, upon his return to Louisiana, attempted performing light carpentry work.
On August 31, 1970 plaintiff was again examined by Dr. Grunsten, who thought that plaintiff had overcome his injury with no residual disability. However, on the next day Dr. Phillips examined plaintiff and found spasm, with complaints of pain radiating into the upper extremities. On this basis Dr. Phillips expressed his opinion at trial that plaintiff had a 20% permanent disability of the neck, which would prevent him from performing heavy labor. The doctor also expressed his belief that plaintiff's persistent pain on longitudinal compression was not likely to have resulted from a rear end collision and that while a healthy young person might experience occasional simple pain sixteen months after such a collision, plaintiff exhibited consistent paravertebral spasm.
On January 20, 1971, two days prior to trial, Dr. Janetta reexamined plaintiff and found tenderness over the posterior spine and restricted neck motion. He expressed his opinion that plaintiff was incapacitated from doing heavy driving or lifting, basing his opinion to some extent on the fact that plaintiff had attempted to return to this type of labor before and had been in immediate trouble after these attempts.
The trial judge dismissed plaintiff's suit, finding he had not sustained his burden of proof "(i)n view of the conflict of medical authorities, none of whom appear to be more authoritative to the Court, the intervening automobile accident causing similar injuries complained of by plaintiff and the work history of plaintiff" after the accident.
*530 As to the issue of the intervening automobile accident, a blow on the top of the head produces a compression injury, while a rear and collision produces an extension injury. Each injury produces different symptomathology to some extent. Dr. Phillips, who first examined plaintiff less than one month after the automobile accident, explained:
"Well, if the patient is hit on the top of the head, he has an entirely different sort of an injury than we see in a normal whiplash which is a flexion and extension injury. This is a compression injury where the head is forced down. The atlantal occipital is the joint right here. This is the joint in which the head nods back and forth. There are two little joints that the head sits on in the first ten or twenty degrees of nodding occur at this area. When you are banged on the top of your head, this is the first joint that is affected. The intervertebral joints are the joints below that with the disc spaces and these are also affected in a decreasing manner; farther down you get, the less they are affected, the upper joints more than the lower and that's what I believe he had. He had physical findings of it and it's a common type of injury." (Emphasis added.)
Dr. Grunsten did not really contradict this opinion, in that several days after the automobile accident he found a flexion deficit and diagnosed neck sprain "resulting from a blow to the top of his head." Dr. Fisher, who was treating plaintiff at the time of the automobile accident, attributed the injury to a low on the head. Dr. Cotlar diagnosed a compression injury. Plaintiff himself stated to Dr. Grunsten shortly after the automobile accident that his symptoms remained the same.
On the other hand, while the symptoms from both accidents were manifested in the same area, and while some doctors testified that some symptoms were compatible with both types of injury, there was virtually no testimony which tended to establish the probability that plaintiff's complaints at the time of trial were caused by a rear end collision.
The plaintiff in a workmen's compensation case has the burden of proving every element of his action, including causation of the claimed disability, by a preponderance of the evidence. Proof is sufficient to constitute a preponderance when the evidence, taken as a whole, shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). When the question is one of sufficiency and preponderance of evidence rather than one of resolving conflicting testimony or determining credibility of witnesses, the rule of not disturbing the trial court judgment unless manifestly erroneous does not apply. Jones v. Bryant, 283 So.2d 307 (La.App. 4th Cir. 1973).
In our opinion the evidence in this case preponderates in favor of a conclusion that any residual disability suffered by plaintiff at the time of trial was caused by the accident sustained in the course of his employment.
Whether or not plaintiff proved that a residual disability existed on the date of trial which rendered him unable "to do work of any reasonable character" is a separate issue, on which the medical testimony was in conflict.
Plaintiff was admittedly disabled when last seen by Dr. Echols and when first seen by Dr. Fisher and Dr. Grunsten. He improved to the extent Dr. Fisher discharged him to light duty (as not capable of doing his regular work, although on the next work day the doctor discharged him to full duties). Dr. Fisher never examined plaintiff again after the attempted work activity. By the time plaintiff was discharged by Dr. Fisher (September 8), Dr. Phillips had already taken over his treatment (August 14). Both Dr. Phillips and Dr. Cotlar (who later undertook the treatment *531 on consultation) considered him continuingly disabled.
In fact, only one of the several physicians who examined plaintiff after Dr. Fisher discharged him in September, 1969 (at which time defendant terminated compensation payments) classified him as able to perform his previous duties. This was Dr. Grunsten, who on August 31, 1970 found plaintiff free of residual disability and fit to return to work. On the next day, however, the treating orthopedist, Dr. Phillips, found continuing spasm, which he stated had recurred every time plaintiff had attempted work activity.
Thus, the only substantial conflict as to residual disability (as between those doctors in a position to testify on the subject) was between (1) Dr. Grunsten's findings at the last of two examinations and (2) the findings of the treating orthopedist, as well as those of the treating general surgeon and consulting neurosurgeon.
Normally, where there is a substantial conflict in the medical testimony, this court will not disturb the trial judge's resolution of the conflict. The resolution in this case, however, is complicated by the intervening automobile accident, an issue we have already decided based on an assessment of the preponderance of the evidence. Once the intervening accident is disregarded, the conflict in the medical opinions on residual disability appears extremely disproportionate.[5]
From the foregoing analysis of the extensive medical testimony, we conclude plaintiff was still disabled at time of trial from doing work of any reasonable character. He is therefore entitled to compensation for the duration of his disability, not to exceed the statutory maximum.
The demand for penalties and attorney's fees is rejected, since the denial of compensation was reasonably based on competent medical opinions.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that there be judgment in favor of plaintiff and against defendant for workmen's compensation benefits at the rate of $45.00 per week, for a period not to exceed 500 weeks, together with legal interest from the due date of each payment until paid, for necessary medical expenses up to the statutory maximum, and for court costs, including expert fees.
Reversed and rendered.
GAUTHIER, Justice (dissenting).
I am of the opinion that the majority has erred in the following respects.
Under our jurisprudence, the claimant bears the burden of proof by a preponderance of the evidence. It is incumbent upon he who alleges a disability to establish the existence of that condition to a reasonable certainty and by a clear preponderance of the testimony.
The majority ignores the well acknowledged rule that the trier of fact is in the best position to evaluate the credibility of the witnesses and to make the determination of the appropriate weight to be given their testimony. The trial judge's findings are entitled to great weight and his conclusions are not to be disturbed unless he is clearly in error.
*532 In this matter the trial judge concluded that the claimant failed to carry the burden of proof necessary to establish his alleged disability. I am unable to conclude that the trier of fact was "clearly in error" in his evaluation of the truthfulness of plaintiff's claim in light of the entire record of medical and lay testimony.
I respectfully dissent.
NOTES
[1] The first electroencephalogram was reported as abnormal. Dr. Echols stated that the later normal results indicated the injury had caused a temporary abnormality, which subsequently disappeared.
[2] The facial weakness or palsy, although the subject of conflicting medical testimony, was conceded by all physicians to be nondisabling.
[3] Dr. Janetta found no neurological deficiencies, except possibly a slight facial weakness. He noted the tenderness of the cervical spine and limitation of motion, but felt that the prognosis was good. He stated the findings were compatible with either a compression injury or extension injury.
[4] Dr. Trail's examination and findings were not pertinent to the orthopedic problem which is the basis of the claimed disability.
[5] As an influencing consideration on the resolution of conflicting evidence, we liken the fact of the intervening accident to the admission of improper evidence to a jury. Under such circumstances, when there is the probability that the fact finder's resolution of conflicting testimony was influenced by improper considerations, the reviewing court does not accord the usual weight to the fact finder's resolution. The reviewing court maythen (1) decide the issue based on the record, or (2) if the record supports a determination either way, depending on credibility of witnesses, remand the case for a credibility determination uninfluenced by the improper considerations.