411 So.2d 1042 (1982)
James Paul SCHOUEST, Jr.
v.
J. RAY McDERMOTT & CO., INC.
No. 81-C-1573.
Supreme Court of Louisiana.
January 25, 1982.
Concurring Opinion April 2, 1982.
As Amended April 16, 1982.
*1043 James L. Donovan, of Donovan & Lawler, Metairie, for plaintiff-applicant.
Claude O. Vasser of Jones, Walker, Waechter, Pointevent, Carrere & Denegre, Metairie, for defendant-respondent.
CALOGERO, Justice.[*]
There are factual and legal issues presented in this worker compensation case.
(1) Factually, has plaintiff proven that he suffers from silicosis, an occupational disease, by virtue of his employment with J. Ray McDermott over the past fifteen years?
The trial court's conclusion did not negate the presence of silicosis; rather it was simply that plaintiff was not disabled.[1] The Court of Appeal found that plaintiff does suffer from silicosis.
(2) Is plaintiff disabled?
The trial court found that he was not. The Court of Appeal found, at least inferentially, that he was. They found that he is no longer able to work as a sandblaster or in any but a silica free environment, and that his "impairment... is slight" and it "will not interfere with moderate to heavy work" in a silica free environment. Schouest v. J. Ray McDermott & Co., Inc. unpublished (La.App. 4th Cir. 1981), No. 11581.
(3) Legally, is plaintiff entitled under the law to a compensation judgment in any respect?[2]
The trial court determined that he was not. The Court of Appeal found also that he was not entitled to any judgment because, in addition to the fact that his impairment was slight and would not interfere with the performance of moderate to heavy work, he was offered "a job (or any of three jobs in five locations) at his former wages by defendant in an atmosphere testified to be relatively free of dust." They so found while nonetheless acknowledging that the progressive nature of plaintiff's silicosis assures ultimate permanent disability. They dismissed his claim with prejudice while concluding that plaintiff is at liberty to bring a new lawsuit at such time as the "regrettably inescapable disability that silicosis promises" arrives.
We find that plaintiff indeed does suffer from job related silicosis, that he is partially disabled, and that he is entitled under law to an appropriate judgment in his favor.
James Paul Schouest, Sr., a painter/sandblaster with only a fourth grade education, was employed by J. Ray McDermott, Co., Inc. intermittently from 1964 to 1971 and continuously for the seven years from 1971 to January 1979. In November, 1978, a company scheduled routine chest x-ray revealed changes compatible with silicosis. Schouest was so notified on January 9, 1979. Two weeks later, Schouest consulted his family physician, Dr. Alden H. Baehr, because of respiratory problems evidenced by bronchitis and the flu. Dr. Baehr referred him to the now deceased Dr. Morton S. Ziskind, an expert in the field of pulmonary disease at Tulane University School of Medicine. On February 6, 1979, Dr. Ziskind reported to Schouest (with carbon copies to Dr. Samuel Logan, the doctor administering the November 1978 x-ray, and to Mr. James Carroll of J. Ray McDermott Co., Inc.):
The diagnosis of silicosis has been established and Mr. Schouest should be removed from exposure to respirable free silica. His respiratory impairment at present is slight and will not interfere with the performance of moderate to heavy work.
*1044 J. Ray McDermott Co., Inc. paid workers' compensation benefits of $3825.55 and medical benefits of $624.76 for the period beginning January 24, 1979 through August 6, 1979. A letter dated August 16, 1979 from George B. Lester, compensation representative for J. Ray McDermott, Co., Inc., to plaintiff reads as follows:
We are in receipt of correspondence from Dr. Eugene Rosenberg and Dr. Alden Baehr stating that you may return to work in a restricted dust environment.
It is arranged for you to return as an equipment repairman. This position is offered to you in as much as you cannot return to your former occupation.
Based on these recommendations from the Doctor's [sic], you are being returned to work status as of August 6, 1979. Your weekly compensation benefits have ceased as of that date. Failure for you to return to work, may result in personnel action. Questions may be addressed to this department.
Plaintiff did not return to work at J. Ray McDermott. His compensation benefits were thus terminated. This suit followed on August 27, 1979.
At trial when plaintiff rested his case, the court, without written reasons, granted defendant's motion to dismiss.
While affirming the district court's dismissal, the Fourth Circuit Court of Appeal found that job related silicosis had been established, a finding, with which, as we have already stated, we agree. While the burden in workers' compensation cases is upon the plaintiff (as it is in other civil litigation) to establish a controverted fact by a preponderance of the evidence,[3] there is no error in finding that James Schouest carried his burden in this instance. Proof by a preponderance of evidence is sufficient when "the evidence taken as a whole, shows that the fact ... sought to be proved is more probable than not." Hall v. Great Atlantic and Pacific Tea Company, Inc. 297 So.2d 527 (La.App. 4th Cir. 1974), quoting Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971), writ denied 300 So.2d 842 (La.1974).
The medical report of Dr. Morton Ziskind[4] and the testimony of Dr. Alden Baehr, the plaintiff's physician, expressly confirmed the presence of silicosis. Such diagnosis and the opinions of the treating physician and specialist to whom referred by the treating physician are entitled to more weight than that of those doctors examining the plaintiff for consultation for litigation purposes only. Williams v. Liberty Mutual Ins. Co., 327 So.2d 462 (La.App. 3d Cir. 1976); Babin v. Highlands Ins. Co., 290 So.2d 720 (La.App. 1st Cir. 1974); Gates v. Ashy Construction Co., Inc., 171 So.2d 742 (La.App. 3d Cir.), writ denied 247 La. 678, 173 So.2d 542 (1965); Harris v. Argonaut Ins. Co., 142 So.2d 501 (La.App. 2d Cir. 1962).
It is nonetheless noteworthy that the doctors called by the defense did not categorically rule out silicosis but only advanced other possible prognoses. Furthermore, medical testimony "must be weighed in the light of other credible evidence of a non-medical character, such as a sequence of symptoms or events in order to judicially *1045 determine probability". Vicknair v. So. Farm Bureau Casualty Ins. Co., 292 So.2d 747 (La.App. 4th Cir.), writ denied 296 So.2d 838 (La.1974). Lay testimony at trial confirmed Schouest's respiratory problems. We affirm, then, the Court of Appeal's determination that the plaintiff had contracted silicosis while employed as a painter/ sandblaster for J. Ray McDermott Co., Inc.
The consequence of Schouest's having contracted silicosis is less easily resolved. Before the enactment of La.R.S. 23:1031.1, disabilities arising from diseases contracted in the course of employment were handled as forms of "cumulative injury" by the judiciary to effect a just and equitable result. Malone & Johnson, Workers' Compensation § 219, 13 La.Civ.L. Treatise 457 (1980). In 1952 the Louisiana legislature sought to eliminate some of the uncertainties by providing for occupational disease coverage and by expressly providing for certain occupational diseases under the Louisiana workers' compensation law. La.R.S. 23:1031.1. Silicosis was one such disease. La.R.S. 23:1031.1(B)(4).
Then because many employment related diseases did not fit into the statutory categories, the Louisiana legislature in 1975 replaced the specific schedule with one of a more general nature. This change, nonetheless, was designed to include those previously enumerated (like silicosis) as well as to embrace certain others formerly excluded. Malone & Johnson, supra § 220 at 462. Silicosis, then, is a statutorily covered occupational disease, for which a worker may receive workers' compensation.
Regarding employees who are eligible to receive compensation, La.R.S. 23:1031.1(A) provides:
Every employee who is disabled because of an occupational disease as herein defined, or the employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
This section of the statute was interpreted in LaCoste v. J. Ray McDermott and Co., Inc., 250 La. 43, 193 So.2d 779 (1967) to deny compensation to a painter and sandblaster who had contracted silicosis but who had not quit working in the same job. This Court regarded the plaintiff as not totally and permanently disabled because he continued to work "at the same job and for the same employer without undue pain or discomfort." LaCoste, supra. Finding no disability, this Court allowed no compensation judgment.
Later, in Chivoletto v. Johns-Manville Products Corp., 330 So.2d 295 (La.1976), a split court denied compensation for total and permanent disability to a plaintiff who had quit working with asbestos because of a plant shut down, but who had continued working at a different type of employment at increased wages. There was, too, in that case, a serious factual question concerning whether plaintiff actually suffered from asbestosis. The Court majority concluded that he was not disabled.
Unlike LaCoste and Chivoletto[5] Schouest is disabled. On the advice of his doctor and because of his medical condition, he has discontinued working at sandblasting. He is prohibited for the same reasons from ever working again in a silica environment.
The matter remaining for the Court in this case is to ascertain the character of Schouest's disability under the present law.
Plaintiff argues that he is entitled to an award for permanent total disability because he is unable to work at sandblasting or in any but a silica free environment, and because his impaired physical condition and limited education liken him to those injured workers whom this Court has found to be "odd lots" in the competitive labor market.
*1046 Under La.R.S. 23:1221 prior to the 1975 legislative amendments, plaintiff would have been classified permanently and totally disabled since the statute provided permanent total disability if a worker was unable to perform "work of any reasonable character," and under the judicial interpretation of this language in Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 (1932) and its progeny, an injured plaintiff seeking compensation was found to be permanently and totally disabled in virtually all cases where he was unable to engage in the same or similar work as that in which he was employed at the time of the injury.
The 1975 legislative amendments to the Louisiana Workers' Compensation Act redefined total disability in an apparent effort to classify as partially disabled many claimants who were formerly characterized as permanently and totally disabled despite their being able to earn substantial wages at a different occupation. As a balance to the reclassification, the amendments increased the benefits payable to the permanently and totally disabled employees.
Permanent total disability in the amended act is defined as the inability "to engage in any gainful occupation for wages whether or not the same or similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience..." La.R.S. 23:1221(1) and (2) (Acts 1975, No. 586 § 9) The new definition apparently resulted from legislative reaction to the judicial disability standard enunciated in Knispel, supra. Malone and Johnson, supra § 272, at 597. The commentators foresaw the court's adoption of the "odd-lot" doctrine in Louisiana as a means of providing relief for marginal workers who were unable to be classified totally and permanently disabled under the statutory definition. Malone and Johnson, supra § 276 at 619; Johnson, Workmen's Compensation, 39 La.L.R. 881 (1979). "Odd-lot" became a jurisprudential reality in Louisiana in 1980 with Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
To argue that he should be classified by this Court as an odd lot worker in a competitive labor market, plaintiff relies on Oster, supra, and Turner v. American Mutual Insurance Co., 390 So.2d 1330 (La.1980). In Oster, supra at 1323-1324, this Court enunciated the following test:
In order to determine whether the plaintiff fits within this category of odd lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factors, that he "cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity. "Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721, 723 (1966). If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with "a gainful occupation." It is fairer to place the burden on the defendant to show that there are steady jobs to the plaintiff, after plaintiff has shown his odd lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation. Brown v. Safeway Stores, 483 P.2d 305, 308 (N.M. App.1971); Lyons v. Industrial Special Indem. Fund, 98 Idaho 403, 565 P.2d 1360, 1363 (1977); Larson, supra. § 57.61 at pp. XX-XXX-XXX.
In Oster, this Court found that the plaintiff had established a prima facie case for classification as an "odd lot" worker, and *1047 that the defendant employer had not rebutted plaintiff's prima facie case. This Court, therefore, awarded her permanent total disability compensation. In Turner,[6] we found that the worker had established a prima facie claim for compensation under the odd lot doctrine, but remanded the case to the district court to allow the defendant employer an opportunity to show that "an actual job in Turner's vicinity exists that might afford the plaintiff gainful employment," because the use of the odd lot doctrine to determine the extent of a worker's disability had only been "recently announced" Turner, supra., at 1334.
The parties, in oral argument, have expressed satisfaction with the existing record for the purpose of this Court's application of the odd lot doctrine to the case at hand. No remand is required. On the basis of the record, we conclude that while plaintiff's silicosis indeed prevents him from working as a sandblaster, he is otherwise able to work and is not so disabled as to make him a marginal employee. As the Court of Appeal properly concluded, Schouest is able to perform moderate to heavy work in a silica free environment. He was offered employment by the defendant; he has worked with his brother-in-law's company as a tack welder. Plaintiff has not made out a prima facie case for classification as an odd lot worker and so is not eligible for permanent total disability.
This does not, however, preclude his receiving any compensation award at all. See e.g. Allor v. Belden Corp., 393 So.2d 1233 (La.1981). Under La.R.S. 23:1221(3) as amended, an employee who is unable "to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience ..." is classified as partially disabled.
A preponderance of the evidence establishes that Schouest can no longer do sandblasting, that he cannot return to work where he would be exposed to "respirable free silica" and that his physical condition will not improve with time.
The parties in this litigation argue about whether defendant's offer of employment was an offer of employment in a silica free environment. The Court of Appeal found that the proposed jobs were in such an environment. We might find reason to conclude otherwise.[7] However, we need not resolve that factual issue here. Offers of other employment are irrelevant in cases of partial disability. Only actual employment and earned wages are relevant and then only as a credit against the compensation otherwise due. La.R.S. 23:1221(3) fixes the compensation rate for partial disability at "sixty-six and two thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, ..." (Emphasis provided)
This latter provision of the Workers' Compensation Act as amended in 1975 is unlike the former partial disability provision which had fixed compensation according to a formula based on the loss of "earning capacity" rather than loss of actual earnings. See Malone & Johnson, supra § 275 at 615.[8]
*1048 We conclude that the plaintiff is entitled to compensation based on permanent partial disability from August 6, 1979, the date on which compensation was last paid. The appropriate rate and duration of compensation is to be fixed by the trial court in accordance with law, with the appropriate credit for those weeks in which actual wages are earned.[9] Furthermore, under La.R.S. 23:1203, plaintiff is entitled to receive reimbursement for his medical expenses.
We conclude, however, that plaintiff is not entitled to penalties and attorney's fees. La.R.S. 23:1201.2 allows the awarding of penalties and attorney's fees when the employer's discontinuing compensation payments is found to be "arbitrary, capricious, or without probable cause." As noted in Crawford v. Al Smith Plumbing and Heating Service, Inc., 352 So.2d 669 at 673 (La. 1977):
The penalty provision is stricti juris and should be imposed only in those instances in which the facts negate probable cause for nonpayment. Guillory v. Travelers Insurance Company, 294 So.2d 215 (La. 1974).
In this case, the award to which plaintiff is entitled is a consequence of the amendments to the Louisiana Workers' Compensation Act, particularly the new provision on partial disability which only allows the deduction or offset of wages actually earned from the amount of compensation otherwise due (rather than allowing earning capacity to be taken into account). This Court has not heretofore had to consider the interrelationship of that portion of the 1975 amendments with the occupational disease coverage under the Act. Furthermore, at the time the employer decided to discontinue compensation, he was perhaps prompted by LaCoste and Chivoletto, silicosis and asbestosis disability cases decided unfavorably to the workman, although admittedly decided under the compensation statute before its 1975 amendment. Under these circumstances, we cannot say that the defendant employer's refusal to pay compensation was arbitrary, capricious or without probable cause. For these reasons, penalties and attorney's fees are not appropriate.

DECREE
For the reasons assigned, the judgment of the Court of Appeal is reversed. The case is remanded to the trial court for entry *1049 of a judgment in favor of the plaintiff consistent with this opinion, with the trial judge determining the appropriate rate and duration of compensation for partial disability, and the medical expenses for which reimbursement is owed.
REVERSED AND REMANDED.
WATSON, J., recused.
LEMMON, J., concurs and will assign reasons.
LEMMON, Justice, concurring.
The hard facts of this case point up the unfairness in certain situations when the phrase "wages which the injured employee actually earns" in R.S. 23:1221(3) is interpreted as the court does here.
In this case the injured employee is able to perform every job he was able to perform prior to his termination of employment, as long as he does the work in a silica-free atmosphere.[1] The employer offered him other jobs, allegedly in a silica-free atmosphere, but he declined the offer and is now receiving compensation, during those weeks in which he earns no wages. Under the majority's interpretation, he will receive benefits for 450 weeks, whether or not he ever seeks other employment which he is admittedly capable of performing.
In 1975 the Legislature attempted to redefine total disability to exclude those injured employees who are able to engage in gainful employment, but cannot perform the duties in which he was customarily engaged at the time of his injury. Prior to the 1975 amendments, such a claimant was classified as totally disabled and was entitled to benefits for the duration of his disability, subject to the statutory limitation, even if he actually earned equal or greater wages at another job. Knipsel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 (1932). Under the 1975 amendments, an injured employee who can return to work, but only at a different job, is now classified as partially disabled and is entitled to benefits only during those weeks in which he earns less than his wages at the time of the injury. As a result of the legislative trade-off, an injured employee who truly is totally disabled receives greater benefits for the unlimited length of his disability, and one who is only partially disabled receives benefits for a limited period when he is unable to equal his pre-injury earnings, but receives no benefits when he is earning more than he did prior to the injury.
The scheme generally works well, because most employees would prefer to work and earn full wages than to sit back and collect compensation at 66 2/3% of wages. The system falters, however, whenever a person is able to work at available jobs and chooses to draw benefits instead. In fact, a partially disabled employee can, under this decision, take a 450-week vacation at two-thirds pay or perhaps can even put his 450 weeks "in the bank" (since benefits under R.S. 23:1221(3) are deferrable until he is not working) and collect two-thirds pay for 450 weeks at some point in the future as a sort of retirement benefit.
The Legislature surely did not intend such a result.[2] Admittedly, the change in the wording of R.S. 23:1221(3) from the difference between prior wages and the wages the employee "is able to earn thereafter" to the wages he "actually earns" thereafter justifies the court's decision in this case. Nevertheless, I believe that the Legislature only intended benefits to be payable for partial disability when the disabled employee does not earn wages because of that disability, either because the injury prevents his working in a particular week or because work is not available to a worker in that condition with his particular education and skills.
*1050 I would construe the statute as placing the burden of proof on the employer to show the employee's ability to work and the availability of work, but I would disallow benefits when the employer proves the employee does not work only because he chooses to collect compensation instead.
This is the appropriate standard, in my opinion, to apply on remand in this case.
NOTES
[*] Honorable Melvin A. Shortess participated in this decision as an Associate Justice ad hoc.
[1] The trial judge stated in granting the motion to dismiss:

The Court is convinced from the medical testimony, that it has heard in this Courtroom relative to this case, there has been no establishment of any disability. The Court concurs with Counsel for the Defendant, based on the medical testimony that the Court has heard, that this man is able to go back to work.
[2] Plaintiff seeks permanent total disability, La. R.S. 23:1221(2), alternatively partial disability, La.R.S. 23:1221(3), and further alternatively, award for permanent impairment of physical function. La.R.S. 23:1221(4)(p).
[3] See Crooks v. Belden Corp., 334 So.2d 725 (La.App. 3d Cir. 1976); Fontenot v. Liberty Mutual Ins. Co., 230 So.2d 402 (La.App. 3d Cir. 1970); Norred v. Travelers Ins. Co., 236 So.2d 637 (La.App. 2d Cir.) writ denied 256 La. 842, 239 So.2d 354 (1970); Saucier v. General Oceans Corp., 241 So.2d 781 (La.App. 3d Cir. 1970).
[4] Because Dr. Ziskind had died before trial of this matter, his medical report was admitted notwithstanding a hearsay objection by the defense. There was no error in the admission of this report under these circumstances. The mere fact that proferred evidence is hearsay is not sufficient grounds to exclude it in a workers' compensation case. See Oestriecher v. Mutual Life Ins. Co. of New York, 167 So.2d 461 (La.App. 4th Cir.), cert. denied 246 La. 910, 168 So.2d 821 (1964); Johnson v. Cajun Enterprises, 293 So.2d 617 (La.App. 3rd Cir. 1974); Montgomery v. Delta Concrete Products, Inc., 290 So.2d 769 (La.App. 1st Cir.) cert. denied 294 So.2d 823 (La.1974). The foregoing cases are cited for this proposition in an excellent discussion on the admissibility of hearsay in workers' compensation cases appearing in Malone & Johnson, Workers' Compensation § 390, 13 La.Civ.L. Treatise 297.
[5] Chivoletto is also distinguishable in that the plaintiff there came under the permanent and total disability provisions of the compensation law before the significant 1975 amendments. The plaintiff here is governed by the law as amended in 1975.
[6] See also: Lattin v. HICA Corp., 395 So.2d 690 (La.1981) and Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980).
[7] To establish the silica free nature of the job sites, Mr. J. Hubbard, an expert in the field of vocational rehabilitation and a job placement specialist hired by the defendant employer after litigation had begun, spent only two and a half hours at the job location and then at a time when sandblasting was not in operation. No monitoring equipment was utilized. Plaintiff presented substantial testimony in rebuttal. Three lay witnesses who had worked for the defendant in and about the yard, the tool shed and the receiving area in question testified concerning the dust-laden nature of the environment and the unpredictability of the silica in the air, given shifting wind and weather conditions.
[8] The legislative change has not been without some criticism. Malone and Johnson, supra at 619 notes:

To pay the maximum amount of compensation to a capable injured worker who declines to work, and, at the same time, to pay decreasing amounts of compensation to capable individuals who choose to work, will satisfy no one's sense of propriety. But that is, on the surface, the legislature's choice. (Emphasis in original)
[9] La.R.S. 23:1221(3) provides:

For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976; and not beyond a maximum of four hundred twenty-five weeks for such partial disability resulting from injury occurring on and after September 1, 1976, and on or before August 31, 1977, and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3).
[1] For this reason the court of appeal found he was not yet disabled in a traditional sense and denied compensation.
[2] As noted earlier, the legislative trade-off was to increase benefits for those who truly are totally disabled and to classify as partially disabled those who previously fit the Knispel situation. The result of this decision is that a Knispel claimant, who previously would have received 662/3% of wages for 550 weeks, is now eligible to receive the same benefits for 450 weeks, if he chooses not to work at another job.