# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA03-250

**CYNTHIA M. SMITH**

**VERSUS**

**M. RANDALL COMEAUX, D.D.S., ET. AL.**

\*\*\*\*\*\*\*\*\*\*

OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 02-02511
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLIE COLOMBARO WOODARD
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ned E. Doucet, Jr., Chief Judge, Billie Colombaro Woodard, and Jimmie C. Peters, Judges.

**AFFIRMED.**

Paul D. Gibson
James Edward Diaz, Jr.
Gibson-Gruenert, L.L.P.
Post Office Box 3663
Lafayette, Louisiana 70502-3663
(337) 233-9600
Counsel for Plaintiff/Appellee:
    Cynthia M. Smith

Sammie M. Henry
Johnson, Stiltner & Rahman
Post Office Box 98001
Baton Rouge, Louisiana 70898-8001
(225) 231-0916
Counsel For Defendants/Appellants:
    M. Randall Comeaux, D.D.S.
    Louisiana Workers' Compensation Corporation

WOODARD, Judge.

M. Randall Comeaux, D.D.S. (Comeaux) and Louisiana Workers' Compensation Corporation appeal a summary judgment, awarding Ms. Cynthia Smith supplemental earnings benefits, as well as reasonable and necessary medical expenses associated with her work-related carpal tunnel syndrome. We affirm.

* * * * *

Ms. Smith sought disability benefits, claiming that she could no longer perform her duties as a dental hygienist because she suffered from work-related carpal tunnel syndrome (CTS), an occupational disease. On April 5, 2002, she filed a disputed claim for compensation seeking disability benefits. Specifically, she stated, "The stress of fine manipulation of instruments in my work led to the condition of carpal tunnel syndrome."

There is no dispute that she is disabled. However, Comeaux contends that her disability is not because of an occupational disease. Specifically, it asserts that her disability is due to rheumatoid arthritis, rather than CTS. This determination is critical to Ms. Smith's claim because work-related CTS is expressly *included* in the definition of "occupational disease," while any type of arthritis is expressly *excluded* from the definition.[1] Furthermore, Comeaux contends that the CTS resulted from Ms. Smith's rheumatoid arthritis and is not related to her work.

The WCJ found that "the evidence persuasively establishes that Ms. Smith is disabled from working as a dental hygienist as a result of carpal tunnel syndrome caused by her work." Accordingly, the WCJ granted summary judgment in her favor. Thus, we must determine whether any genuine issues of material fact remain to be decided, regarding the causal connection between Ms. Smith's CTS and her disability or the causal connection between the CTS and her work.

---

[1] La.R.S. 23:1031.1(B).

1

***** 

**STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

We review summary judgments, *de novo*, under the same criteria which govern the trial court's consideration of whether summary judgment is appropriate.[2] Louisiana courts favor the summary judgment procedure which is designed to secure the just, speedy, as inexpensive determination of actions.[3] Therefore, we shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue regarding a material fact and that the mover is entitled to judgment as a matter of law."[4]

**BURDEN OF PRODUCTION IN SUMMARY JUDGMENT PROCEEDING**

Louisiana Code of Civil Procedure Article 966(C)(2) describes the applicable burden of production in a summary judgment proceeding:

> [I]f the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for *one or more elements* essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

(Emphasis added.) Thus, we proceed with an analysis of the evidence in the instant case under this burden-shifting framework.

---

[2] *Goins v. Wal-Mart Stores, Inc.*, 01-1136 (La. 11/28/01), 800 So.2d 783.

[3] *Id.*; La.Code Civ.P. art. 966(A)(2).

[4] La.Code Civ.P. art. 966(B).

**ENTITLEMENT TO DISABILITY BENEFITS**

In determining the employee's entitlement to disability benefits, the Louisiana Workers' Compensation Act does not distinguish an employee who contracts a disabling occupational disease from an employee whose injury results from an accident that arose out of and in the course of her employment.[5]  The definition of "occupational disease" includes "work-related carpal tunnel syndrome."[6]  Thus, in order to receive benefits, Ms. Smith must prove, by a preponderance of the evidence, that her carpal tunnel syndrome was contracted during the course of her prior twelve months' employment and that it was causally connected to her disability.[7]

*Cause of Disability*

The record reflects that Ms. Smith suffers from three different conditions—degenerative disc disease, CTS in her right hand, and arthritis in both hands.  She avers that she can distinguish between the hand-related conditions because the arthritis affects both of her arms, whereas the CTS affects only the right arm.  Accordingly, she says that she could have continued working notwithstanding the arthritis and disc degeneration; therefore, it is the CTS that led to her disability.

Dr. James M. Lipstate, a rheumatologist, was her primary treating physician.  He referred her to, both, Dr. James N. Domingue and Dr. Thomas V. Bertuccini, neurologists.  Reports and/or depositions of all three doctors are in evidence.

A review of Dr. Lipstate's reports, from October 25, 1999 through the time of trial, reveals that his initial suspicions that she suffered from CTS arose from her complaints of tingling and numbness in her right hand.  Responding to these particular complaints, he recommended electrophysiological testing, which confirmed his suspicions of CTS.  Dr. Domingue's report further supports that the CTS is what caused these particular symptoms.  It states, "She [Ms. Smith] tells me that the final straw in her quitting work was because she could not feel the instruments any longer

---

[5]La.R.S. 23:1031.1(A).

[6]La.R.S. 23:1031.1(B).

[7]La.R.S. 23:1031.1(D).

with her right hand. I think, therefore, that it was the carpal tunnel syndrome that led to her loss of employability."

Further, Dr. Bertuccini's report states, "She [Ms. Smith] is concerned that her grip strength on the right may be less than normal as she has had difficulty controlling dental instruments. She has a history of numbness involving the right hand occurring intermittently over the past 18 to 24 months. . . . EMG and nerve conduction studies of the right arm and neck and nerve conduction studies of the left arm done May 22, 2001 by Dr. Jim Domingue showed an abnormality that implied evidence of a lesion involving the right median nerve at the wrists. An EMG of Oct. 26, 1999, done by Dr. Anseman also showed evidence consistent with right carpal tunnel syndrome."

Further, in a letter to Ms. Smith, Dr. Lipstate stated, "I agree that the carpal tunnel syndrome was the *defining factor* in your decision to go on disability, but certainly the arthritis and neck symptoms were also contributing factors in that regard." (Emphasis added.)

Accordingly, we find that Ms. Smith's disability was causally connected to the CTS.

*Cause of Carpal Tunnel Syndrome*

Drs. Lipstate and Domingue pointed out that Ms. Smith's rheumatoid arthritis gives her a predisposition to develop CTS. However, the reports of all three doctors prove, by a preponderance of the evidence, that her CTS was work-related. In a letter to her, Dr. Lipstate wrote, "When you have rheumatoid arthritis it can be a predisposing factor to carpal tunnel syndrome, as can hand intensive occupations such as working as a dental hygienist. I cannot with any degree of medical certainty tell you what percentage of your carpal tunnel syndrome could be attributable to these conditions." And Dr. Domingue reported, "Further, I think, despite the fact that she has rheumatoid arthritis which gives her a predisposition to develop carpal tunnel syndrome, *it was clearly the occupation that worsened it and made it symptomatic enough to cause her to lose her ability to work.* This is evidenced by the fact that she has improved now that she is not working. . . . *It would be my opinion, therefore, that her occupation as a dental hygienist led her to develop carpal tunnel syndrome adequate to lead to her loss of employability.*" (Emphasis added.)

4

## COMEAUX'S DEFENSE

Comeaux's defense consisted of two allegations: 1) Ms. Smith's disability resulted from the rheumatoid arthritis, rather than the CTS; and 2) Ms. Smith's CTS was not work related. Thus, Ms. Smith had the burden of showing an absence of factual support for these allegations.

We find that she did so. All the physicians believed the CTS was a cause of her disability and that her work, at least, aggravated the CTS. Further, they noted that the CTS improved upon her leaving the job, which indicated to them a work-related, causal connection.[8] All of this evidence is sufficient to satisfy her burden of proof.[9] Thus, the burden shifted to Comeaux to provide factual support for its defense.

## COMEAUX'S FACTUAL SUPPORT

Comeaux contends that Dr. Lipstate's deposition offered factual support for its contentions. Namely, Dr. Lipstate declined to attribute Ms. Smith's disability, *solely*, to one of the three medical conditions because he found them to be interrelated. Since she suffers from all three medical problems, Dr. Lipstate could not conclusively state that the CTS, alone, was the primary cause of her disability. By the same token, however, he could not conclusively state that the arthritis was the primary cause. Comeaux points out the following testimony for support:

Q. Okay. Now in reference to her seeking a disability status, you said you were supportive of this decision. Could you in any way put a percentage on which one of these things were more of a disabling factor to her than another?

A. No, and there's a subsequent letter to that effect in my chart. I don't know how one can . . . here she has three different medical problems. She has known degenerative disc disease in her neck, she has carpal tunnel syndrome in her right hand, and she has rheumatoid arthritis. I guess really four. She also has degenerative arthritis in her hands. I think any of those things alone in certain circumstances could be disabling, especially in a hand intensive occupation. Taking in all things together, I think it would be . . . make it very difficult for her to continue in her work as a dental hygienist. . . .

---

[8] *See Hebert v. Lake Charles Am. Press*, 427 So.2d 916 (La.App. 3 Cir. 1983).

[9] *Id.*

Q. You can't say it's the carpal tunnel syndrome that prevents her from working as a dental hygienist?

A. I don't think I can say with any degree of medical certainty which of those four conditions played the greatest role. I think I have to look at the patient in toto.

Nevertheless, Comeaux cannot simply attempt to discount the physicians' testimonies "because of their tendency to refrain from unqualified statements or opinions on such matters of causation."[10] "[I]t is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover."[11] "Furthermore, medical testimony must be weighed in light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability."[12] Comeaux failed to present any factual support that there was a *separate* and *intervening* cause.[13] This failure creates a material issue of fact concerning whether the CTS played a role in Ms. Smith's disability.

Furthermore, while Dr. Bertuccini's report corroborates Dr. Lipstate's findings of three separate medical conditions, as well as his recommendation to stop working, Dr. Bertuccini's report, likewise, does not indicate which of the three conditions prevents her from returning to work. However, this inconclusive testimony does not factually support Comeaux's contentions and satisfy burden of proof.

Even though Dr. Lipstate's and Dr. Bertuccini's inconclusive reports offered support that the arthritis *may* have been *a* cause of her disability, this fact, even if proved at trial, would not defeat Ms. Smith's recovery. She need only prove that the CTS, *also*, was causally connected to her disability.[14] To be a material issue, Comeaux would have to offer factual support indicating that the arthritis was a cause of her disability *and* that the CTS *was not* causally related to the disability. Contrarily, it offered no evidence of any physician that supported the contention that Ms. Smith's disability resulted, solely, from her rheumatoid arthritis, and it failed to

---

[10]*Id*. at 920.

[11]*Id*. (citing *Hammond v. Fid. & Cas. Co. of NY*, 419 So.2d 829 (La.1982)).

[12]*Id*. (citing *Schouest v. J. Ray McDermott & Co.*, 411 So.2d 1042 (La.1982)).

[13]*Id*.

[14]*See Id*.

provide any factual support indicating that the CTS was not causally related to her disability. Therefore, there is no material issue of fact left to be decided regarding the cause of Ms. Smith's disability.

Secondly, Comeaux contends that Ms. Smith's CTS is not "work-related." As factual support, it offers Dr. Lipstate's testimony:

> Q. Would you consider that carpal tunnel syndrome that she experienced and those symptoms would have been caused by her work as a dental hygienist?
>
> A. Well, again, we can see carpal tunnel syndrome as an overuse syndrome in some hand intensive occupations. Whether that is the *sole* likely cause, *I'm not certain* in this particular case. She did not relate to me in any of our visits any other activities --that may have aggravated it. But, again, you know, I mean, exercise, other -- You know, activities at home may – you know, I could see as playing a role. She -- *the symptoms seemed to pre-date* <u>the onset</u> *of the rheumatoid arthritis*. I had mentioned earlier, sometimes rheumatoid arthritis, especially if there's a lot of swelling in the wrists, can aggravate carpal tunnel symptoms. She did in some --I think in one of the latter visits demonstrate some swelling in the wrists, and so that can aggravate the carpal tunnel. But *I don't think that that was necessarily playing a role early on in her early visits*. At least that I could determine.

(Emphasis added.)

Again, this inconclusive testimony does not offer adequate factual support that Ms. Smith's CTS is not related to her work. Comeaux offered no factual evidence that some other activity may have caused the CTS. Moreover, it is irrelevant that additional causes may have contributed to the disability, as long as on-the-job trauma is, in fact, a disabling factor. Her burden consists of showing, only, that the CTS "contributed to the disability, however slight; and, as a consequence, [she] is no longer able to perform work activities associated with the pre-[CTS] job."[15] (Emphasis added.) Dr. Domingue found that it was Ms. Smith's occupation that, at least, aggravated the CTS and made it symptomatic enough to lead to her unemployability. Both, Dr. Lipstate and Dr. Domingue found that her CTS symptoms had greatly

---

[15]*Lavergne v. Lake Charles Mem'l Hosp.*, 625 So.2d 1098, 1102-03 (La.App. 3 Cir. 1993), *writ denied*, 93-2756 (La. 1/7/94), 631 So.2d 45 (citing MALONE & JOHNSON, 13 LOUISIANA CIVIL LAW TREATISE, WORKER'S COMPENSATION (2d ed.) § 256).

improved once she stopped working, supporting their conclusion of a necessary causal connection.

Further, although the testimony and physicians' records, as a whole, are ambiguous regarding which condition preceded the other, Dr. Lipstate's testimony does not support Comeaux's contention that CTS resulted from the arthritis because Dr. Lipstate noted that the symptoms of CTS "seemed to predate the onset of rheumatoid arthritis." Nonetheless, even if Ms. Smith were predisposed to CTS because of the arthritis, this would not defeat her recovery of benefits. "Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed."[16] Thus, even if proved, this fact is not material in determining her entitlement to benefits.

We find that Ms. Smith met her initial burden to establish that she was disabled due to work-related CTS and of pointing out an absence of factual support for Comeaux's defense. Contrarily, when the burden shifted basically, Comeaux only offered that the arthritis contirbuted to Ms. Smith's disability. However, this would not defeat her recovery even if proved and, therefore, is not a material issue of fact. Accordingly, Ms. Smith was entitled to summary judgment, which we affirm.

**FRIVOLOUS APPEAL**

Ms. Smith answered Dr. Comeaux's appeal, contending that his appeal could not have been made in good faith because the evidence is clear and undisputed. However, "[d]amages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious."[17] We cannot say that the instant appeal rises to such a level. Therefore, we deny Ms. Smith's request for damages for this allegedly frivolous appeal.

---

[16]*Walton v. Normandy Vill. Homes Ass'n, Inc.*, 475 So.2d 320, 324 (La.1985) (citing *Lucas v. Ins. Co. of N.A.*, 342 So.2d 591 (La. 1977); *Johnson v. Travelers Ins. Co.*, 284 So.2d 888 (La.1973); LARSON, WORKMEN'S COMPENSATION LAW, § 12.21).

[17]*Hampton v. Greenfield,* 618 So.2d 859, 862 (La.1993) (quoting *Parker v. Interstate Life & Acc. Ins. Co.*, 248 La. 449 (1965)).

**CONCLUSION**

We affirm the WCJ's grant of summary judgment in Ms. Smith's favor, awarding her supplemental earnings benefits and medical expenses associated with her work-related CTS.  However, we decline to award her damages for frivolous appeal.  We cast the costs of this appeal, equally, on the Appellants, Comeaux and LWCC.

**AFFIRMED.**